# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 22, 2013

No. 12-10609
Summary Calendar

Lyle W. Cayce
Clerk

LANCE PUIG; EDITH EKLUND PUIG,

Plaintiffs-Appellants

v.

CITIBANK, N.A., as Trustee for WAMU Series 200HE-2 Trust,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-cv-00270-L

Before JOLLY, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this case, Appellants Lance Puig and Edith Eklund Puig appeal the district court's grant of summary judgment on their suit challenging Appellee Citibank's power to foreclose on the Puigs' property. The Puigs also appeal the district court's denial of a motion to modify the court's scheduling order. Because we find that the district court did not err in granting summary judgment or in denying the Puigs' motion, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10609

FACTUAL AND PROCEDURAL BACKGROUND

In December 2003, Mr. Puig purchased real property located at 10810 Bushire Drive in Dallas, Texas financed through a high-interest loan from a private lender. In September 2004, Mr. Puig obtained a home-equity loan, part of which was used to satisfy the 2003 loan. On January 22, 2007, Mr. Puig refinanced the 2004 loan by obtaining another home-equity loan from Washington Mutual Bank ("WaMu") for $720,000—$295,079 of which was paid out in cash to Mr. Puig. Mr. Puig executed a Home Equity Adjustable Rate Note (the "Note") for the 2007 WaMu loan (the "Loan"), and secured the Note by executing a Texas Home Equity Security Instrument (the "Deed of Trust") encumbering the Bushire Drive property.

On September 25, 2008, the Office of Thrift Supervision closed WaMu, and the Federal Deposit Insurance Corporation ("FDIC"), as receiver, entered into a Purchase and Assumption Agreement with JP Morgan Chase Bank, N.A. ("JPMC") under which JPMC purchased WaMu's loans and loan commitments. Around this time, Mr. Puig received notice that payments on the Loan should be made to Chase Home Finance, LLC. On May 5, 2009, JPMC assigned the Note and Deed of Trust to Citibank, as evidenced by an Assignment of Lien, while Chase Home Finance, LLC continued to service the Loan on Citibank's behalf.

In early 2009, Mr. Puig stopped making payments on the Loan and Chase Home Finance, LLC posted notice of a foreclosure sale of the Bushire Drive property. The Puigs filed suit against Citibank on January 13, 2011 in state court to prevent foreclosure and Citibank removed the case to federal district court based on diversity jurisdiction. In their first amended complaint filed in the district court on March 9, 2011, the Puigs sought injunctive and declaratory relief aimed at enjoining foreclosure and invalidating the lien on the property, as well as damages. The Puigs argued that 1) Citibank lacks standing to enforce the Deed of Trust, 2) the lien is invalid because Citibank violated various

2

No. 12-10609

homestead protections of the Texas Constitution, and 3) Citibank should be held liable for alleged acts of fraud and misrepresentation committed by WaMu.

On December 1, 2011, one day before the close of discovery, the Puigs filed a motion under Rule 16(b) of the Federal Rules of Civil Procedure to modify the district court's scheduling order by extending the order's discovery deadline. On December 16, Citibank filed a motion for summary judgment. The district court denied the Puigs' Rule 16(b) motion on February 28, 2012 and granted Citibank's motion for summary judgment on May 21, 2012. This timely appeal followed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 694 (5th Cir. 2011). We review a district court's denial of a motion to modify a scheduling order for abuse of discretion. *Huval v. Offshore Pipelines*, 86 F.3d 454, 458 (5th Cir. 1996).

## ANALYSIS

I.     Standing to Enforce the Deed of Trust

With respect to the Puigs' claim for declaratory relief premised on Citibank's alleged lack of standing to enforce the Deed of Trust, the district court granted summary judgment in favor of Citibank, holding that the Puigs failed to offer evidence that Citibank is not the assignee of the Note or Deed of Trust. On appeal, the Puigs argue that this decision was in error because they have established a genuine issue of material fact as to whether the Loan was actually assigned to Citibank. Specifically, the Puigs assert that 1) the Note lacks any indorsements evidencing an assignment from WaMu to Citibank; 2) Citibank has failed to prove the existence of the Purchase and Assumption Agreement between the FDIC and JPMC, or the trust agreement for which Citibank is acting as trustee; and 3) there is no proof that Eric Tate, the person who executed the assignment from Chase to Citibank, had lawful authority to do so.

3

No. 12-10609

Under Texas law, even if an assignee is not identified in a note, the assignee may still enforce it by "prov[ing] the transfer by which he acquired the note," or in other words, by showing the note's "chain of title." *Leavings v. Mills*, 175 S.W.3d 301, 309–10 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In addition to the fact that no party other than Citibank has sought to enforce the Deed of Trust and the Puigs have continuously acted as if Citibank is the holder of the Note, the evidence supports the district court's conclusion that Citibank has adequately established the chain of title of the Note from WaMu to Citibank. The district court relied on documents demonstrating that the Loan was 1) originated by WaMu, R. 301; 2) purchased by and transferred to JPMC through the FDIC, R. 330; and 3) assigned from JPMC to Citibank and recorded in the real property records of Dallas County, Texas, R. 334. As for the Puigs' speculation that Eric Tate lacked authority to execute the assignment, nothing in the record supports this unsubstantiated claim. Based on this evidence, we affirm the district court's grant of summary judgment on the Puigs' claim that Citibank lacks standing to enforce the Deed of Trust.

II.     Texas Constitutional Homestead Protections

The Puigs argue that they presented competent summary judgment evidence showing that Citibank failed to comply with state constitutional provisions ensuring that a lien on a homestead is voluntary. Specifically, the Puigs claim that the lien on the Bushire Drive property is invalid and Citibank is thus barred from foreclosing on the property because, contrary to the home-equity loan requirements of article XVI, section 50 of the Texas Constitution, the Puigs 1) did not receive a copy of the Notice Concerning Extensions of Credit at least twelve days before the Loan closed, 2) were not given a three-day window to rescind the loan transaction without penalty, 3) did not receive a draft settlement statement or final itemized disclosure of fees at least one business day before the Loan closed, and 4) did not receive copies of all

No. 12-10609

documents signed at the closing of the Loan.[1]  The Puigs asserted the first two violations in their March 9, 2011 first amended complaint,  Pls.' First Am. Compl. ¶¶ 36–37, while the latter two violations were not raised until Mr. Puig's deposition on November 29, 2011, Br. of Appellant 14–15.

A.     Draft Settlement Statement and Copies of Closing Documents

If a home-equity loan does not meet the requirements of article XVI, section 50, a lender may still avoid invalidation of a homestead lien by curing any failures to comply within 60 days of receiving notice of the deficiencies from the borrower.   TEX. CONST. art. XVI, § 50(a)(6)(Q)(x); *see also Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 345–46 (Tex. 2001) (describing operation of cure provision).  One method by which a lender may cure deficiencies is by providing "a refund or credit to the owner [*i.e.*, the borrower] of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan" at no cost to the borrower and on the same terms as the original loan.  TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)(f).

In a November 16, 2011 letter, Citibank sought to cure the constitutional violations alleged in the Puigs' first amended complaint by enclosing a $1,000

---

[1] The relevant subsections of article XVI, section 50 state the following:
The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that . . . (M) is closed not before: (i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section; [and] (ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing . . . ; and (Q) is made on condition that . . . (v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit; . . . [and] (viii) the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge . . . .
TEX. CONST. art. XVI, § 50(a)(6).

check and offering to refinance the Loan for its remaining term at no cost and on the same terms as the original loan. R. 353. On December 9, 2011, Citibank issued a similar letter aimed at curing the two additional violations alleged in Mr. Puig's November 29 deposition. R. 358. Because Citibank invoked the article XVI, section 50 cure provision within 60 days of Mr. Puig's deposition, the violations of sections 50(a)(6)(M)(ii) and 50(a)(6)(Q)(v) alleged in the deposition were adequately cured. This is not the case for the section 50(a)(6)(M)(i) and 50(a)(6)(Q)(viii) violations alleged in the Puigs' first amended complaint since Citibank's November 16 letter invoking the cure provision was not issued within 60 days of receiving notice through the first amended complaint. We therefore address the merits of these two allegations below.

B.     Notice Concerning Extensions of Credit

The Puigs allege that they did not receive a copy of the Notice Concerning Extensions of Credit at least twelve days before the Loan closed, as required by article XVI, section 50(a)(6)(M)(i). A copy of the Notice shows that Mr. Puig signed and dated the Notice on December 25, 2006, nearly a month before the Loan closed on January 22, 2007. R. 349. Mr. Puig alleged in his November 29, 2011 deposition that the date on the document is a forgery, R. 471, and the Puigs assert on appeal that the Notice was not received twelve days before closing. These allegations are contradicted, however, by Mr. Puig's admission earlier in his deposition that he "presumably . . . signed on the 25th, because that is my signature and my date." R. 261–62. Furthermore, even if these contradictory statements cast some doubt on whether Mr. Puig signed the Notice on December 25, 2006, the Puigs do not point to any evidence showing when the Notice was actually received. In fact, Mr. Puig stated in his deposition that he did not know when he received and signed the Notice. R. 260–61. Accordingly, the district court correctly held that no genuine issue of material fact exists as to the claim that the Notice was not received at least twelve days before the Loan closed.

No. 12-10609

C.     Three-Day Opportunity to Rescind

To support their claim that they were not given three days after closing to rescind the Loan, the Puigs dispute the authenticity of a January 26, 2007 date allegedly signed by Mrs. Puig on a document acknowledging that "more than three business days have elapsed" since the Puigs received notification of the right to cancel the Loan. R. 348. This allegation fails to create a genuine dispute of material fact as to whether the Puigs were given three days to rescind the Loan because, regardless of when Mrs. Puig signed this document, the Puigs admit that they never sought to or desired to cancel the Loan. *See* R. 259. Because this is not a case where plaintiffs attempted to, but were denied the opportunity to rescind a loan within the three-day window guaranteed by article XVI, section 50(a)(6)(Q)(viii), the Puigs' claim fails.

III.     Fraud

The Puigs' fraud claim is premised on WaMu's alleged forgery of Mrs. Puig's middle name on various documents as well as the alleged insertion of fraudulent dates on documents in order to comply with the article XVI, section 50 requirements described above. Under Texas law, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Even if WaMu's conduct were attributable to Citibank—an assertion which the district court rejected—the Puigs have failed to allege that they relied on WaMu's supposed misrepresentations to their detriment. Indeed, it is undisputed that the Puigs sought and obtained the $720,000 loan from WaMu, and none of the fraud allegations place the legitimacy of the underlying loan transaction into question. Thus, the Puigs have not raised any genuine issue of material fact as to whether

No. 12-10609

Citibank may be liable for fraud. Furthermore, while the Puigs' allegations of backdating certain documents remain relevant for their constitutional claims, these claims fail for the reasons noted above.

IV.     Motion to Modify Scheduling Order

A scheduling order "may be modified only for good cause and with the judge's consent," FED. R. CIV. P. 16(b)(4), and we have interpreted Rule 16(b)(4)'s "good cause" standard to require the movant "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). Thus, to determine whether the district court abused its discretion in finding no good cause to modify its scheduling order, we look to the Puigs' diligence in conducting discovery within the scheduling order's timeline.

The district court's March 10, 2011 scheduling order required the parties to complete discovery by December 2, 2011. The Puigs argue that, because their former counsel withdrew and their current counsel did not enter an appearance until November 7, 2011, they were unable "to conduct meaningful discovery" within the scheduling order's timeline. Br. of Appellant 31. The Puigs' argument is unconvincing because while it is true that their former counsel withdrew in October 2011, the Puigs did not conduct any discovery between March and October, nor do they explain why they were unable to conduct discovery during that time. Because the Puigs have failed to show diligence in meeting the scheduling order's discovery deadline, we find that the district court did not abuse its discretion in denying the Puigs' Rule 16(b) motion.

No. 12-10609

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Citibank and its denial of the Puigs' Rule 16(b) motion.

AFFIRMED.