# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50090
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 13, 2017

Lyle W. Cayce
Clerk

WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity but as Trustee of ARLP Securitization Trust,

> Plaintiff - Appellee

v.

GLORIA BLIZZARD,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-236

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Gloria Blizzard appeals the district court's grant of summary judgment in favor of Plaintiff–Appellee Wilmington Trust, National Association[1] (Wilmington Trust), allowing foreclosure on her

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Wilmington Trust appears not in its individual capacity but as Trustee of ARLP Securitization Trust.

homestead. On February 7, 2007, Roy Blizzard, then-husband of Gloria, signed a Texas Home Equity Adjustable Rate Note (the Note) for $196,000.00. Gloria did not sign the Note. To secure the Note, both Gloria and Roy signed a Texas Home Equity Security Interest (the Deed of Trust) granting the lender a lien on their property in Cedar Park, Texas. Subsequently, Roy defaulted on the Note and entered into a Modification Agreement with HomEq Servicing (HomEq), the entity then servicing the Note. The Modification Agreement modified the Note, reducing the interest rate and the monthly payment amount. Both Roy's and Gloria's signatures appear on the Modification Agreement, but Gloria claims her signature was forged. Roy later defaulted on the Note (as modified), and on July 19, 2010, HomEq sent two notices of default and acceleration to an address in Austin, Texas—rather than the Cedar Park address—with one notice directed to Gloria and one to Roy.

Eventually, Wilmington Trust became the Note's holder and the Deed of Trust's beneficiary. On March 24, 2015, Wilmington Trust initiated this suit, seeking a judgment allowing it to foreclose on the Blizzards' Cedar Park property. After Roy failed to respond to the suit, the district court entered a default judgment against him. Wilmington Trust then moved for summary judgment against Gloria, which the district court granted. Gloria timely appeals.

This court reviews de novo the district court's grant of summary judgment, "viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-

No. 17-50090

moving party.'" *In re Katrina*, 495 F.3d at 206 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Gloria first argues that summary judgment was improper because she did not sign the Note or the Modification Agreement (her signature on the latter being a forgery), and thus, Wilmington Trust does not have a valid lien on the Cedar Park property—Gloria's homestead. Under the Texas Constitution, a homestead lien must be voluntary. The Constitution states:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . . (6) an extension of credit that: (A) is secured by a *voluntary lien* on the homestead created under a written agreement with the *consent of each owner and each owner's spouse.*

Tex. Const. art. XVI, § 50(a)(6)(A) (emphases added). A lien is voluntary if "[a]n owner or an owner's spouse who is not a maker of the note . . . consent[s] to the lien by signing a written consent to the mortgage instrument." 7 Tex. Admin. Code § 153.2(2); *see also Puig v. Citibank, N.A.*, No. 3:11–CV–0270, 2012 WL 1835721, at *8 (N.D. Tex. May 21, 2012) (holding that § 50(a)(5)(A)'s requirements were "satisfied when Mr. Puig (owner) and Mrs. Puig (owner's spouse who is not a maker of the note) sign[ed] the deed of trust"), *aff'd*, 514 F. App'x 483 (5th Cir. 2013) (per curiam).

Here, Gloria voluntarily consented to the lien by signing the Deed of Trust.[2] Therefore, the lien satisfies § 50(a)(6)(A)'s requirements, regardless of whether Gloria signed the Note. *See* Tex. Admin. Code § 153.2(2); *see also Puig*, 2012 WL 1835721, at *8. Thus, there is no genuine issue of material fact as to whether the lien was valid and enforceable under the Texas Constitution.

---

[2] In fact, the Deed of Trust states: "[A]ny person who signs this Security Instrument, but does not execute the Note . . . agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse . . ."

No. 17-50090

Gloria next argues that summary judgment was improper because the Modification Agreement was void due to forgery of her signature. In order for § 50(a)(6)(A) to apply to a restructuring of a home equity loan, the restructuring must involve "a new extension of credit." *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 15 (Tex. 2014). As the Texas Supreme Court has explained:

> [T]he restructuring of a home equity loan that . . . involves capitalization of past-due amounts owed under the terms of the initial loan and a lowering of the interest rate and the amount of installment payments, but does not involve the satisfaction or replacement of the original note, an advancement of new funds, or an increase in the obligations created by the original note, is not a new extension of credit that must meet the requirements of Section 50.

*Id.* at 17. Here, the Modification Agreement decreased the Note's interest rate and monthly payment amount; but it did not satisfy or replace the Note, advance new funds, or increase the obligations created by the Note. Thus, there was no requirement that the Modification Agreement comply with § 50(a)(6)(A)'s requirements, including the spousal consent requirement. Because Gloria's consent to the Modification Agreement was not required, the alleged forgery of her signature was immaterial, and thus did not preclude summary judgment.

Gloria finally argues that summary judgment was improper because Wilmington Trust provided inadequate notice of default by sending the notice to the Austin address rather than the Cedar Park address.[3] Under Texas law, "the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence

---

[3] Gloria also argues that Wilmington Trust provided inadequate notice because it referenced a default under the Modification Agreement, which was void due to forgery of her signature. Because we conclude that Gloria has failed to establish that the Modification Agreement was void, as discussed *supra*, we reject this argument.

with *written notice* by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Tex. Prop. Code Ann. § 51.002(d) (emphasis added). "Service of a notice . . . is complete when the notice is deposited in the United States mail, postage prepaid and *addressed to the debtor at the debtor's last known address.*" *Id.* § 51.002(e) (emphasis added). Under these provisions, only constructive notice—rather than actual notice—is required. *See, e.g., Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 361 (5th Cir. 2014) (per curiam) (citing *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 720 (Tex. App.—Dallas 1995, no writ)). Black's Law Dictionary defines "constructive notice" as "notice presumed by law to have been acquired by a person and thus imputed to that person." *Constructive Notice*, BLACK'S LAW DICTIONARY (10th ed. 2014).

In *Robinson v. Wells Fargo Bank, N.A.*, the deed of trust stated: "Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise." *Robinson*, 576 F. App'x at 361. Based on that provision, this court found that the plaintiff received constructive notice because her husband admitted that he received a notice sent to their shared address. *Id.*

Here, the Deed of Trust has an identical provision to the one in *Robinson*. Roy did not dispute that he received the notices. And although Roy and Gloria did not share the Austin address where HomEq sent the notices, the Deed of Trust states: "The notice address shall be the [Cedar Park address] unless Borrower has designated a substitute notice address by notice to the Lender. . . . There may be only one designated notice address under this Security Instrument at any one time." HomEq's foreclosure specialist's affidavit stated, and the notices in the record support, that he sent the notices by certified mail

to Roy's last known address—the Austin address, a point that Gloria does not dispute.

Therefore, Gloria received constructive notice. Before Wilmington Trust acquired the Note and Deed of Trust, HomEq sent two notices—one specifically directed at Gloria—by certified mail to the last known address. Thus, Wilmington Trust satisfied its notice obligations under Texas law.

The judgment of the district court is AFFIRMED.