

# NUMBER 13-21-00176-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALLEN DALE SCHMITGEN
AND ROSIE A. F. SCHMITGEN,                                    Appellants,

v.

SERVIS ONE, INC., D/B/A BSI FINANCIAL
SERVICES, INC., AND WILMINGTON SAVINGS
FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST
AS OWNER AND TRUSTEE OF THE RESIDENTIAL
CREDIT OPPORTUNITIES TRUST II,                               Appellees.

## On appeal from the 117th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina**

By two issues, appellants Allen Dale Schmitgen and Rosie A. F. Schmitgen appeal

the trial court's summary judgment in favor of appellees Servis One, Inc., d/b/a BSI

Financial Services, Inc. (BSI), and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Owner and Trustee of the Residential Credit Opportunities Trust II (Wilmington). They argue that the trial court should have excluded Wilmington's summary judgment evidence because the supporting witness lacked personal knowledge and Wilmington did not challenge each element of Rosie's usury claim. We affirm.

## I. BACKGROUND

On July 30, 2016, Allen executed a note to purchase real property in Nueces County agreeing to make monthly payments beginning on September 1, 2016, and continuing each month until 2046. Rosie did not sign the note and is not liable on the note. Allen stopped making payments in September 2017. In August 2018, BSI, as Wilmington's mortgage servicer, sent the Schmitgens a notice of default and intent to accelerate the loan. The Schmitgens sued Wilmington for, among other things, "excessive" interest. Wilmington countersued for foreclosure. In a combined motion, Wilmington moved for traditional summary judgment on its claim and no evidence summary judgment on the Schmitgens' claim. The trial court granted the motion on March 12, 2021, and it rendered an order dismissing the Schmitgens' claims and granting Wilmington's counterclaim. This appeal ensued.[1]

---

[1] On appeal, the Schmitgens claim that the trial court granted summary judgment in favor of Wilmington on breach of contract; however, Wilmington did not sue the Schmitgens for breach of contract. It sued for foreclosure due to Allen defaulting on the note. *See Mark v. Household Fin. Corp. III*, 296 S.W.3d 838, 839 (Tex. App.—Fort Worth 2009, no pet.) ("A suit to foreclose on real property . . . is a legal proceeding seeking the satisfaction of a debt through foreclosure of [a] lien on real property" on the basis of "a promissory note secured by a deed of trust or mortgage on real property.").

Furthermore, the Schmitgens clarify in their brief that they "are not complaining in this appeal of the trial court's actions in granting the summary judgment on the liability portion of [Wilmington's foreclosure] cause of action."

2

## II. ADMISSION OF EVIDENCE

By their first issue, the Schmitgens argue that Wilmington's affiant "freely admits that some of the documents that she attached to her affidavit came from other servicers or mortgagees" and "never showed . . . that she had . . . acquired personal knowledge other than through her review of the records maintained by some other company." *See* TEX. R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Therefore, according to the Schmitgens, Wilmington failed to prove the amount owed on the note.[2]

### A. The Affidavit

In her affidavit, attached to Wilmington's motion for summary judgment, the affiant averred that she is employed by BSI Financial Services (BSI) as the Senior Corporate Representative and that:

> The facts stated in this declaration are within my personal knowledge and are true and correct.
>
> . . . .

---

[2] As a sub-issue to their first issue, appellants contend that the trial court improperly excluded statements made by Allen in his affidavit "that the figure of $344,062.01 was excessive; that $85,000 of interest would not have accrued over two years on a principal of $193,134.38; and that that much interest would not have accrued in that time period." The trial court sustained Wilmington's objections to exclude these statements on the basis that they are conclusory, self-serving, and constitute a legal conclusion.

The Schmitgens offer no citation to pertinent authority, and we find none, supporting their contention that it was error for the trial court to make these rulings. Instead, the Schmitgens argue that Allen's statements were "mathematical" and "made by a party who signed the note." Therefore, we conclude that this sub-issue to their first issue is inadequately briefed and overrule it. *See* TEX. R. APP. P. 38.1. In addition, they do not specifically challenge the grounds for the trial court's exclusion. Thus, the Schmitgens have failed to show an abuse of discretion.

BSI is the mortgage servicer for Wilmington . . . the holder of the Note and beneficiary of the Deed of Trust secured by [Allen's Nueces County property].

. . . .

In my referenced capacity, I am fully authorized to make this declaration for BSI. I am the authorized agent or representative of BSI with respect to Allen['s]. . . loan. I have access to and have reviewed the servicing records and loan data for [Allen's] account. When BSI receives documents from other parties, such as the prior mortgage servicers or mortgagees, those documents are placed in BSI's business records at or near the time they are received and are adopted as business records of BSI. My testimony is based upon on my familiarity with the business practices, record keeping system and practices of BSI, the mortgage industry and my review of BSI's business records.

. . . .

Attached to this Affidavit are records kept in the regular course of business and it was the regular course of business of BSI or its predecessor, for an employee or representative of BSI, with knowledge of the act, event, condition or opinion recorded, to make the record, or to transmit information thereof to be included in such record; and the records attached hereto were all made at or near the time of the act, event, condition or opinion, or reasonable soon thereafter. The records attached to this Affidavit as Exhibits . . . are true and correct copies of the originals or the exact duplicates of the originals.

## B.    Standard of Review and Applicable Law

We review a trial court's evidentiary decisions for an abuse of discretion. *Garner v. Fid. Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion by acting without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## C.    Discussion

"The primary concern in admitting records such as these is their reliability." *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 245 (Tex. App.—Houston [1st Dist.] 2010, no

4

pet.). Rule of Evidence 803(6) deems business records sufficiently reliable and not hearsay when the records are (1) made at or near the time of the events recorded, (2) from information transmitted by a person with knowledge of the events, and (3) made or kept in the course of a regularly conducted business activity. TEX. R. EVID. 803(6); *see Ortega v. Cach, LLC*, 396 S.W.3d 622, 631 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (explaining that rationale for business-records exception is "two-fold: First, businesses depend on such records to conduct their own affairs, so employees . . . have a strong motive to be accurate [and] second, routine and habitual patterns of creation lend reliability to business records"). The Schmitgens do not attack reliability of the records themselves and do not state that they are inaccurate. Instead, they attack the affiant's personal knowledge of BSI's documents.

Regarding personal knowledge, the affiant does not have to be the creator of the record or have personal knowledge of the contents of the record. *Ortega v. CACH, LLC*, 396 S.W.3d 622, 629 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The affiant must have personal knowledge of the way the records were prepared. *Id.* "The personal knowledge requirement may be satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit." *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 429 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).

In *Rogers v. RREF II CB Acquisitions, LLC*, we stated the following:

It has been widely held, and we agree, that a document authored or created by a third party may be admissible as business records of a different

5

business if: (1) the document is incorporated and kept in the course of the testifying witness's business, (2) that business typically relies upon the accuracy of the document's content, and (3) the circumstances otherwise indicate the document's trustworthiness.

*Id.* at 432.

Here, the affiant provided testimony supporting the first two *Rogers* factors. *See id.* She averred that the documents received from other parties such as prior mortgage servicers are adopted by BSI as business records. *See id.* The affidavit further shows that BSI relies upon the accuracy of the documents' content and keeps them in the course of BSI's business. *See id.*; *Simien*, 321 S.W.3d at 240–41; *see also Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at *12 (Tex. App.—Austin 2013, pet. denied) (mem. op.) (concluding that the affiant's testimony that the business incorporated the third-party payment statements into their business and "that payments have not been made in accordance with the note and deed of trust and that the indebtedness continues to remain unpaid" show that the new mortgage company "relied on the accuracy of the note" and other documents).

The affiant swears that her testimony is based on her personal knowledge and upon her "familiarity with the business practices, record keeping system and practices of BSI, the mortgage industry and [her] review of BSI's business records." She furthered testified that the attached documents were "records kept in the regular course of business" and that "it was the regular course of business of BSI or its predecessor, for an employee or representative of BSI, with knowledge of the act, event, condition or opinion recorded, to make the record, or to transmit information thereof to be included in such record."

6

Moreover, as we stated in *Rogers*, "[m]ultiple courts have suggested that where the factual content of a third-party document is verified based on personal knowledge, this in itself may help resolve a third-party record problem." *See Rogers*, 533 S.W.3d at 433 (first citing *Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 813 (Tex. 1982); then citing *Simien*, 321 S.W.3d at 243; *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 112 (Tex. App.—Dallas 1991, no writ); *Martinez v. Midland Credit Mgmt., Inc.*, 250 S.W.3d 481, 485 (Tex. App.—El Paso 2008, no pet.); *Abrego v. Harvest Credit Management VII, LLC*, No. 13–09–00026–CV, 2010 WL 1718953, at *2 (Tex. App.—Corpus Christi Apr. 29, 2010, no pet.) (mem. op.)). Based on the affiant's sworn testimony as stated above and review of the attached documents, the trial court here could have properly concluded that the affiant had personal knowledge of Allen's account based on BSI's and its predecessor's business practices. *See Rogers*, 533 S.W.3d at 432; *Simien*, 321 S.W.3d at 240–41; *see also Roper*, 2013 WL 6465637, at *12.

Finally, the affidavit is verified, and the affiant swore to the factual content of the attached exhibits and the record-keeping practices by which BSI gathered and reviewed this information. *See id.* Therefore, the trial court could have found a strong indication of trustworthiness in the affiant's testimony. *See id.* Because we have determined that all three factors as set out in *Rogers* are satisfied here and that the affiant had personal knowledge of the way the documents have been kept by BSI, we conclude that the trial court did not abuse its discretion by admitting the complained-of documents under the business records exception. *See Rogers*, 533 S.W.3d at 432; *see also* TEX. R. EVID. 803 (setting out exceptions to hearsay rule). Accordingly, because the affidavit and supporting

7

documents support the trial court's conclusion that Allen owed "$344,062.01 as detailed on the payoff statement issued January 5, 2021," we conclude that the trial court properly granted Wilmington's motion for summary judgment on its foreclosure claim. *See Am. 10–Minute Oil Change, Inc. v. Metro. Nat'l Bank–Farmers Branch*, 783 S.W.2d 598, 601 (Tex. App.—Dallas 1989, no writ) (agreeing that "an affidavit, made on personal knowledge of a bank officer and which identified the notes and guaranty and recited the principal and interest due, was not conclusory and was sufficient evidence to support a summary judgment motion"); *see also Tex. Com. Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517 (Tex. 1999) (allowing affidavit testimony of total amount due under written instrument to support award of that amount in default-judgment proceeding was proper and did not constitute impermissibly conclusory testimony). We overrule the Schmitgens first issue.[3]

### III.    USURY

By their second issue, the Schmitgens contend that the trial court improperly granted Wilmington's motion for no evidence summary judgment on Rosie's usury claim.[4] Wilmington responds that because Rosie is not a borrower under the note, she cannot maintain a usury claim against it.[5]

---

[3] We further note that the trial court could have concluded that the complained-of third-party documents had a "clear indicia of trustworthiness" because the affiant would be subject to criminal prosecution for submitting false documents. *See Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 244 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (explaining that business would suffer or fail if loan companies did not keep careful records of its customers' debt and that third-party documents show trustworthiness because a lying witness would be "subject to criminal prosecution for submitting a false document"); *see also Harpst v. Fleming*, 566 S.W.3d 898, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A "[l]ack of trustworthiness is most frequently found when the record was prepared in anticipation of litigation." *Harpst*, 566 S.W.3d at 910.

[4] On appeal, the Schmitgens do not challenge the no evidence summary judgment as to Allen's claim, if any, for usurious interest.

[5] Both parties agree that Rosie did not sign the note. *See Washington-Jarmon v. Onewest Bank*,

8

**A.    Standard of Review**

When an adequate time for discovery ceases, "a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim . . . on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i); *see Oasis Oil Corp. v. Koch Ref. Co.*, 60 S.W.3d 248, 250 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied). Once a no evidence motion for summary judgment has been filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the challenged elements. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). We consider the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

**B.    Discussion**

First, the Schmitgens argue that summary judgment was improper because Wilmington did not state which element it challenged. *See Garcia v. Tex. Cable Partners, L.P.*, 114 S.W.3d 561, 563 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (setting

---

FSB, 513 S.W.3d 103, 109 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (acknowledging that although the wife signed "the deed of trust, all documents expressly show only [the husband] as a borrower" and "the note which creates the debt identifies only [the husband] as a borrower." *See Alexander v. Wilmington Sav. Fund Soc'y*, 555 S.W.3d 297, 300 (Tex. App.—Dallas 2018, no pet.) (explaining that the Texas Constitution does not require that the spouse sign the note, but that "[a]n owner or an owner's spouse who is not a maker of the note may consent to the lien by signing a written consent to the mortgage instrument."); *see also Wilmington Tr., Nat'l Ass'n v. Blizzard*, 702 Fed. Appx. 214, 216 (5th Cir. 2017) (stating that although the spouse did not sign the note, the spouse nonetheless consented to the lien by signing the deed of trust and note holder was entitled to foreclose on the property). As we understand it, the Schmitgens complaint centers on the fact that Rosie is not a borrower, but Wilmington sent the collection letters to her anyway.

9

out the elements of a claim of usury as: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower). However, in its motion, after setting out the elements of a usury claim, Wilmington states that the Schmitgens "have *no evidence* that any defendant exacted 'greater compensation than allowed by law.'" (emphasis added).

The challenged element requires a finding that Wilmington charged greater compensation for the use of the money *by the borrower. See id.* However, the summary judgment evidence offered by both parties established, as a matter of law, that Rosie is not a borrower because she did not sign the note. *See id.* Allen is the sole borrower on the note.

The burden then shifted to the Schmitgens to bring forth evidence raising a question of fact on the challenged element. The Schmitgens claim they did so by arguing that the collection letters that allegedly charged a usurious amount were addressed to Rosie, a non-borrower, and not just to Allen. They assert that by addressing the letters of collection to her, as a matter of law, Wilmington exacted 'greater compensation than allowed by law'" from Rosie. However, the Schmitgens cited no authority in the trial court, cite none on appeal, and we find none, supporting a conclusion that a non-borrower may make a claim of usury on the basis that the lender included the non-borrower's name in the collection documents. *See* TEX. R. APP. P. 38.1(i); *see also* TEX. FIN. CODE ANN. § 305.001 (providing that "[a] creditor who contracts for or receives interest that is greater than the amount authorized by this subtitle in connection with a commercial transaction

10

is liable to the obligor for an amount that is equal to three times the amount computed by subtracting the amount of interest allowed by law from the total amount of interest contracted for or received").

Accordingly, viewing the evidence in the light most favorable to the Schmitgens, crediting such evidence if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not, we conclude that, because she is not a borrower, Wilmington proved as a matter of law that it is not liable to Rosie on her claim of usury. *See King Ranch, Inc.*, 118 S.W.3d at 751; *see also City of Keller*, 168 S.W.3d at 827; *Domizio v. Progressive Cnty. Mut. Ins. Co.*, 54 S.W.3d 867, 872 (Tex. App.—Austin 2001, pet. denied) ("Moreover, because usury statutes are penal in nature, they must be strictly construed, and if there is any doubt as to legislative intent to punish the activity complained of under usury statutes, the doubt must be construed in favor of the lender."). We overrule the Schmitgens' second issue.[6]

### IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
1st day of December, 2022.

---

[6] The Schmitgens baldly state that the trial court excluded their attorney's affidavit. However, this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Thus, we will not address it.