HARRIS COUNTY APPRAISAL DISTRICT, Appellant,

v.

HOUSTON LAUREATE ASSOCIATES LTD. and Levering & Company, Appellees.

No. 14–09–00380–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 2010.

Rehearing Overruled Dec. 23, 2010.

Tammy Yolanda White–Chaffer, John E. Fisher, Mario L. Dell'Osso, Houston, for appellant.

Hugh L. McKenney, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

In this ad valorem property tax case, appellant Harris County Appraisal District ("HCAD") challenges the trial court's judgment adjusting the appraised value of the property owned by appellees Houston Laureate Associates Ltd. and Levering & Company (collectively, "Houston Laureate"). In two issues, HCAD asserts that there is no evidence to support the judgment because (1) Houston Laureate's attorney violated the Texas Disciplinary Rules of Professional Conduct by presenting its unequal valuation expert's testimony and (2) this expert's research and analysis were not reliable. We affirm.

## Background

Property owners Houston Laureate sued HCAD under Chapter 42 of the Texas Property Tax Code. Houston Laureate alleged, that HCAD had unequally appraised their property, located on Memorial Drive in Houston, for tax year 2006. The case was tried to the bench in December 2008. At trial, only two witnesses testified: Gary Levering, the president of Houston Laureate Associates, Ltd., and Delain Goddard, a certified appraiser employed by Property Evaluation Services.

Levering testified that Houston Laureate has a contingency fee agreement with

tax consultants O'Connor & Associates. According to Levering, Houston Laureate pays O'Connor & Associates a fee contingent on O'Connor & Associates's ability to get Houston Laureate's property tax lowered. Levering testified that he believed the contingency fee was twenty-five percent. He further stated that he "assumed" O'Connor & Associates hired and paid the attorney and the expert witness for this trial. He explained that he had consulted with O'Connor & Associates before filing suit, but that the property manager of this particular property, Todd Casper, had actually been the individual involved in the decision-making process regarding the lawsuit. Todd Casper did not testify at trial.

Goddard testified and described his background and experience as a certified appraiser.[1] He testified that he had formerly been employed by O'Connor & Associates, but in 2005, he and two colleagues formed Property Evaluation Services as "a separate business venture outside of O'Connor." According to Goddard, he and his colleagues left O'Connor & Associates because they were concerned about "an issue in the courts with attorneys using expert ... witnesses who were employed by companies that had a contingency interest in the cases that they were assigned to." The following exchange on cross-examination between HCAD's attorney and Goddard sets out the salient points regarding the relationship between Property Evaluation Services and O'Connor & Associates:

Q. Can you explain for the Court what exactly is PES's arrangement or contract with O'Connor; how it works?

A. Well, through the ongoing agreement, we have pretty much a standing order to analyze all the property cases that they have in litigation to determine if they're unequally assessed in regards to how any particular appraisal district assesses their values. We'll perform market value studies from time to time. And, then, we are to serve as expert witnesses either in deposition or at trial over the cases that we've prepared.

And, then, part of our arrangement, like I had mentioned before, allows us access to a group of clerical administrative people that help to schedule the work, the actual production part of it as far as the paperwork and that type of thing. We have assistance in assembling the data and sometimes the exhibits that might be included in particular work-file supplementation. And, then, the agreement for subleasing the office space and office furniture and computers.

. . .

Q. And how is PES compensated for the work that it does for O'Connor?

A. I think it's simply a monthly flat fee that is designed to accommodate the salaries of the appraisers who work for Property Evaluation Services.

. . .

Q. Are there any bonuses or commissions that are realized by any of your appraisers?

A. No. The only expert fees are just typical expert witness fees that would be invoiced, for example, in this case I'll invoice O'Connor through PES for a fee for appearing here, but it's a flat fee.

Q. What is that flat fee?

A. $1,500.

[1]. Before Goddard testified, the trial court granted HCAD running objections to his testimony on the grounds asserted on appeal.

Q. Is that a flat fee that is paid to all the experts that testify at trial at PES?

A. Currently that's our standard trial testimony fee that we invoice to O'Connor.

Regarding the methodology underlying his unequal appraisal determination, Goddard explained that he found comparable properties using criteria including physical and geographic characteristics. He relied on HCAD's own property designations to find other high-rise "Class A" properties within a ten mile radius of the subject property. He located eighteen comparable properties, which he opined was a "reasonable" number. He explained the various adjustments he made to these properties' appraised values so they would be comparable to the Memorial Drive property, including adjustments for size, age, and location. Several of the properties he identified as comparables had changes to their appraised values during the pendency of the suit. Goddard adjusted his calculations based on the newer appraised values. In addition, HCAD established that several of the comparable properties had separately accounted-for parking garages, but the Memorial Drive property had a parking garage included in its appraised value; again Goddard adjusted his calculations to include the appraised value of the parking garages for those buildings for which the parking garages were separately accounted. Ultimately, Goddard opined that the subject property had been unequally appraised in relation to the comparable properties. He further calculated the median appraised value of the comparable properties at $86.96 per square foot.

After hearing the testimony and argument of counsel, the trial court found in favor of Houston Laureate and reduced the 2006 appraised value of the Memorial Drive property. On March 11, 2009, the trial court entered findings of fact and conclusions of law in support of its judgment. This appeal followed.

### Analysis

■ In its first issue, HCAD asserts that the presentation of Goddard's testimony violated the prohibitions of Texas Rule of Professional Conduct 3.04(b) and Professional Ethics Committee for the State Bar of Texas Opinion No. 553 and thus constituted no evidence to support the trial court's judgment. We disagree.

HCAD cites no authority for the proposition that an attorney's alleged violation of an ethical rule provides a basis for excluding evidence. Indeed, the Court of Criminal Appeals has held that violation of attorney disciplinary rules in obtaining evidence for a criminal proceeding does not bar introduction of that evidence at trial. *Gentry v. State,* 770 S.W.2d 780, 790–91 (Tex.Crim.App.1988); *cf.* Tex. Disciplinary R. Prof'l Conduct Preamble ¶¶ 14–15, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) ("[T]hese rules are not designed to be standards for procedural decisions. Furthermore, the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons.").

Further, we see no violation of the ethical rule upon which HCAD relies in this case. Rule of Professional Conduct 3.04(b) provides, in pertinent part, as follows: "A lawyer shall not ... pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case." Tex. Disciplinary R. Prof'l Conduct 3.04(b). In turn, Ethics Opinion No. 553 addresses the following question, "Is a lawyer prohibited from offering the testimony of an expert witness whose employer has entered into a contingent fee contract

with the lawyer's client regarding the subject matter of the litigation?" Op. Tex. Ethics Comm'n No. 553 (2004). The Professional Ethics Committee for the State Bar of Texas concluded that "[i]t is a violation of the Texas Disciplinary Rules of Professional Conduct for a lawyer to use in a case as an expert witness an employee of a business entity that has a contingent fee interest in the outcome of the case." *Id.*

Here neither Goddard nor his employer, Property Evaluation Services, had a contingency interest in the outcome of this lawsuit. Indeed, Goddard testified unequivocally that he was employed by Property Evaluation Services and that his employer was to be paid a flat fee for his services as an expert witness. This flat fee was to be paid by O'Connor & Associates, which presumably had a contingency interest in the litigation.[2] Such an arrangement is similar to an attorney with a contingency-fee arrangement hiring, for a flat fee, an expert to testify at his client's trial. Such an arrangement is perfectly acceptable, so long as the payment of the expert's fee is not contingent upon the content of the testimony or the outcome of the trial. Tex. Disciplinary R. Prof'l Conduct 3.04(b)(3) (providing that a lawyer may advance, guarantee, or acquiesce in the payment of a reasonable fee for the professional services of an expert witness).

In short, there is simply nothing in the record to suggest that Goddard's fee was contingent upon the content of his testimony. In fact, the following questions by the trial court clarified that the expert's fee was not contingent upon the outcome of the case:

The Court: The—as I appreciate it, the expert was paid, period. Now, whether the original property agent to challenge the appraisal gets a fee or not, that person still has to pay the expert.

[Houston Laureate's Counsel]: Yes. Yes. The expert has been paid.

The Court: And if—if I ... enter a take-nothing judgment for the plaintiffs, the expert doesn't return the money.

[Houston Laureate's Counsel]: No. He's been paid.

The Court: And if I end up entering a judgment in favor of the plaintiffs, does the expert get any additional money?

[Houston Laureate's Counsel]: No.

Thus, Goddard had no contingency interest in the outcome of the case and was paid his fee regardless of whether O'Connor & Associates received its contingency fee. Under these circumstances, we overrule HCAD's first issue.

In issue two, HCAD contends that Goddard's testimony was inadmissible and constituted no evidence because his research and analysis were not reliable. Specifically, HCAD asserts that Goddard's expert report contained multiple errors and omissions, Goddard included no support for his assumptions in making the adjustments to the comparable properties' appraised values, and he lacked knowledge of the individual characteristics of either the subject property or the properties he selected as comparables.

▮▮▮ We review a trial court's decision to admit or exclude an expert witness for an abuse of discretion.[3] *Weingarten Real-*

---

**2.** The record does not reflect the exact nature of the relationship between O'Connor & Associates and Houston Laureate, but such a contingency interest may be inferred from the testimony and evidence presented at trial.

**3.** Although HCAD asserts that there is no evidence to support the trial court's judgment because the expert's testimony was unreliable, there would be no evidence only if we determined that the trial court erred in admitting this expert's testimony. Thus, the appropriate standard of review for this particular issue

*ty Investors v. Harris County Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex.2001)). Under this familiar standard, the trial court abuses its discretion when its ruling is arbitrary, unreasonable, or made without reference to any guiding rules or legal principles. *Id.* Expert testimony is admissible only if the expert is qualified and the evidence is relevant and based on a reliable foundation. *Id.* at 284 (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995)).

 Here, HCAD only challenges the reliability of Goddard's research and analysis. In non-scientific cases such as this one, the trial court ultimately has discretion to determine how to assess reliability. *Id.* In determining whether an expert's research and analysis is based on a reliable foundation, the trial court does not decide whether the expert's conclusions are correct; instead, the trial court must determine whether the analysis used to reach those conclusions is reliable. *Harris County Appraisal Dist. v. Kempwood Plaza Ltd.*, 186 S.W.3d 155, 159 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex.1998)).

HCAD identifies the following "errors" in Goddard's report and testimony:

- One of the properties Goddard claimed was comparable had to be eliminated from the list because it was exempt from property tax.
- The appraised values of several of the comparable properties were incorrect.
- Several of the comparable properties had separate appraisal accounts for their parking garages, although the subject property had a parking garage included in its appraised value.

Each of these issues was, however, addressed by Goddard's testimony. First, the property that was exempt from property tax was removed from the list of comparable properties. Second, the properties HCAD refers to as having "incorrect" appraised values had their appraised values adjusted downward during the pendency of this suit. In fact, Goddard explained the fluidity of appraised values as follows:

> [T]he values, especially of properties at this value level, are constantly changing due to litigation process, correction motions. And I don't consider value when I'm doing these comparisons, so I'm not relying on those values. I'm simply showing the value that the appraisal district is carrying on the property at the time I do the analysis.
>
> It's not unlikely that during the beginning of the analysis to the final resolution that some of those comparable property's values may very well indeed change, which in this case we've seen.

Third, Goddard testified that adding the appraised values of the parking garages to the appraised values of the two buildings with separately accounted-for parking garages did not change the median appraised value of the comparable properties. Goddard further opined that none of these adjustments in value changed his ultimate opinion that the subject property had been unequally appraised.

 In sum, Goddard testified that he identified numerous comparable properties. HCAD classified these properties with the same land use codes—"Class A" high-rise properties. *Cf. id.* (explaining that appraiser selected properties from HCAD's tax rolls with the same land use code and building class as the subject property). According to HCAD's descrip-

is abuse of discretion. *See, e.g., Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex.2001).

tion of this type of properties, Class A properties are income-producing properties with similar physical characteristics, including both new and older properties in desirable locations that command high rental rates, attract top quality tenants, and have well-maintained finishes, with excellent design and above-average workmanship and materials. Goddard adjusted these appraised values based on factors such as size, age, and location. At trial, HCAD did not challenge the specific adjustments Goddard made to these properties (other than those issues identified *supra*), and an appraiser may use his experience and expertise to make these types of adjustments. *See id.* at 161. Further, these adjustments are contemplated by the statutory scheme. *See* TEX. TAX CODE ANN. § 42.26(a)(3) (Vernon 2008) (requiring the district court to grant relief based on unequal appraisal if the "appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties *appropriately adjusted*"); *see also Kempwood Plaza Ltd.,* 186 S.W.3d at 159–60; *Harris County Appraisal Dist. v. United Investors Realty Trust,* 47 S.W.3d 648, 650 n. 4 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (noting that appraiser made adjustments based on, inter alia, location, age, and physical characteristics of comparable properties).

In sum, we cannot say the trial court abused its discretion in determining that Goddard's testimony was reliable. The fact that some of the appraised values of the comparable properties Goddard identified may have changed during the pendency of the suit does not make his data unreliable, and Goddard changed his conclusions to reflect the more current data. This data was obtained using HCAD's records and property classifications, and HCAD provided no competing expert testimony that the properties used by Goddard were not comparable. *See Kempwood Plaza Ltd.,* 186 S.W.3d at 160–62. Moreover, because this evidence was admissible, the trial court's judgment is supported by the evidence. Accordingly, we overrule HCAD's second issue.

## Conclusion

Having overruled each of HCAD's issues, we affirm the trial court's judgment.