**Affirmed and Opinion filed December 21, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00209-CV

---

**KATHY HARPST, STEPHANIE HARTFIELD, FREDIA RICE, JO'QUITA SANDERS, SHANNON MALM, AND LAGEAN MEDEARIS, Appellants**

**V.**

**GEORGE FLEMING AND FLEMING & ASSOCIATES, L.L.P., Appellees**

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2010-25097-A**

---

## O P I N I O N

After a law firm settled tort claims against a drug manufacturer on behalf of approximately 8,000 clients, about half the settling clients sued the firm and one of the firm's lawyers. The clients did not seek to set aside the settlement, but asserted breach of fiduciary duty and contract claims based on their attorneys' alleged failure to disclose certain information related to the settlement and the deduction of allegedly unreasonable expenses from the clients' recovery. The trial court severed

six clients' claims, which proceeded to trial. A jury returned a verdict in the defendants' favor on two dispositive questions, finding that the defendants complied with their fiduciary duty and did not breach the clients' fee agreements by charging unreasonable expenses. The trial judge signed a take-nothing judgment consistent with the jury's verdict, and the clients now appeal.

Appellants challenge the judgment in five issues. First, they argue that the trial court erroneously dismissed one of their claims by granting a pre-trial sua sponte summary judgment in the defendants' favor. On review of the record, we conclude that the complained-of ruling was a limine ruling, which preserves nothing for our review. Second, appellants argue that the trial court erroneously excluded evidence that they were falsely promised free echocardiograms by law firms that referred them to the defendants. According to appellants, the defendants bear responsibility for the referring firms' false promises because the firms entered into joint ventures to recruit appellants as clients. Because we conclude that the trial plaintiffs did not plead this theory of vicarious responsibility, we hold that the trial court did not abuse its discretion in excluding the evidence. Third, appellants argue that the trial court erroneously excluded a witness from testifying. However, appellants have not challenged all possible grounds that support the trial court's ruling, and thus they present nothing for our review. Fourth, appellants argue that the trial court erroneously precluded them from presenting evidence on and submitting to the jury an additional breach of contract theory. We conclude that the trial court's error, if any, was harmless on this record. Finally, appellants argue that the trial court abused its discretion by refusing appellants certain discovery unless they paid the defendants' attorney's fees. Because the record contains no such discovery order, we cannot and do no reach the merits of appellants' final issue. We affirm the trial court's judgment.

**Background**

In the mid-1990s, users of the prescription diet drug combination fenfluramine/phentermine, commonly known as "fen-phen," began to experience heart problems. The drug maker, then known as American Home Products and now known as Wyeth, removed fen-phen from the market in 1997. Across the country, thousands of fen-phen users filed legal actions against the drug maker.

A federal multidistrict litigation (MDL) court was designated to handle pretrial matters in fen-phen cases.[1] The MDL court eventually certified a nationwide class action but also set forth certain procedures and requirements for individual suits. Any claimant preferring to opt out of the nationwide class action and pursue an individual claim had to establish his or her eligibility to sue by undergoing an echocardiogram[2] resulting in a "FDA-positive" reading. Actions by individuals who did not meet the "FDA-positive" threshold were subject to dismissal.

A Houston lawyer, George Fleming, and his then-law firm, Fleming & Associates, L.L.P. (collectively referred to as "the Fleming Firm"), established a nationwide echocardiogram program—at an alleged cost of at least $20 million—to screen potential claimants for eligibility to opt out of the class and assert individual claims. According to the Fleming Firm, more than 40,000 potential clients were screened, and the firm eventually represented over 8,000 "FDA-positive" claimants in pursuing individual claims for personal injuries against Wyeth.

In 2006, Wyeth and the Fleming Firm's 8,051 clients agreed to settle the claims for an aggregate amount of $339 million. Wyeth and the Fleming Firm signed a master settlement agreement ("MSA"), pursuant to which Wyeth would escrow

---

[1] *See generally In re Diet Drugs*, 385 F.3d 386, 389-90 (3d Cir. 2004).

[2] An echocardiogram is "a graphic outline of the movements of heart structures produced by ultrasonography." Mosby's Medical Dictionary 581 (9th ed. 2013).

3

the settlement amount and the firm would disburse the settlement amount to each claimant. Under the MSA terms, the Fleming Firm agreed to, *inter alia*: (a) comply with applicable rules of legal ethics "in connection with this Settlement Agreement and the matters contemplated herein"; (b) advise the clients that they would have no further recourse against Wyeth as a result of the Fleming Firm's allocation and distribution of the settlement amount once each claimant signed a release; and (c) allocate and distribute the settlement amount to the claimants and other attorneys who had a financial interest in the settled claims "in accordance with any retainer agreements or other contractual agreements between them."

Each of the firm's clients then received a twenty-five-page "settlement packet," which explained the nature of the settlement, included a statement showing that particular client's individual net settlement amount after deductions for attorney's fees and client expenses, and answered "commonly asked questions" about the aggregate settlement. Each settlement packet also included a spreadsheet showing the amount of settlement funds allocated to each of the Fleming Firm's clients. More than 95% of the Fleming Firm's clients accepted the settlement and signed releases.[3]

A few years later, a number of the Fleming Firm's former clients who had accepted the settlement and signed releases sued the firm and George Fleming individually for, as relevant here, breach of contract and breach of fiduciary duty.[4] The clients alleged that the Fleming Firm breached its contractual and fiduciary duties in several respects. First, the clients asserted that the firm wrongfully

---

[3] Wyeth's MSA obligations were contingent upon, *inter alia*, 95% of the firm's clients accepting the settlement and executing releases.

[4] The clients asserted a number of other causes of action, as discussed in the opinion for the related *Wilson* appeal also issued today, *Wilson v. Fleming*, No. 14-17-00223-CV, ---S.W.3d--- (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet. h.).

deducted from their settlement payout a pro rata share of expenses for the echocardiogram program, including the screening costs for people whose echocardiograms did not meet the MDL court's opt-out criteria. In other words, the clients alleged that they had to pay a portion of the echocardiogram costs of everyone who was tested, including those potential claimants who failed the FDA screening criteria and never asserted individual claims against Wyeth. Although each of the clients' fee agreements provided that the firm could recover "reasonable" expenses of litigation, the clients contended that the echocardiogram program's overall cost was not an allowable, reasonable expense. Second, the clients claimed they were charged for their own echocardiograms, despite promises that those tests would be free to them. Third, the clients alleged that the firm did not sufficiently disclose the nature of the echocardiogram program deduction in the settlement packets.

The trial court selected six plaintiffs for trial—Kathy Harpst, Stephanie Hartfield, Fredia Rice, Jo'quita Sanders, Shannon Malm, and Lagean Medearis (collectively, the "Harpst plaintiffs" or "appellants")—and severed their claims from those of the firm's other former clients. The jury found against the Harpst plaintiffs, finding that the firm complied with its fiduciary duty and did not fail to comply with the applicable fee agreements by charging expenses that were unreasonable. The trial court signed a final take-nothing judgment against the Harpst plaintiffs consistent with the jury's verdict.

The Harpst plaintiffs now appeal.

**Analysis**

A. **Alleged promises of free echocardiograms**

Appellants' first two issues relate to their claim that they were falsely promised free echocardiograms. Appellants claim they were prevented from

developing this theory or presenting it to the jury because the trial court, first, improperly rendered a pre-trial "sua sponte summary judgment" on the theory and, second, erroneously excluded evidence that appellants were promised free echocardiograms.

Each appellant was referred to the Fleming Firm from other law firms. Appellants claim that the referring firms, through advertisements or direct mail, promised them free echocardiograms but that the Fleming Firm nevertheless deducted the cost of their individual tests from their respective settlements. This deduction, appellants claim, constitutes a breach of fiduciary duty and breach of their respective fee agreements.

1. *Pre-trial ruling*

Prior to trial, both sides filed motions in limine, raising dozens of issues. During a pre-trial hearing, the trial court considered each side's limine points. As relevant here, the Fleming Firm wanted to limit "any reference to the fact that some attorneys promised 'free echocardiograms.'" The firm's attorney explained that "[t]he problem with this is, this is a case against the Fleming Law Firm. The Fleming Law Firm didn't sponsor these advertisements, didn't tell the referring lawyers to go out there and advertise for free [echocardiograms]." After confirming with appellants' attorney that free echocardiograms were promised not by the Fleming Firm but by others, the trial judge questioned why appellants were pursuing that claim against the Fleming Firm instead of the other law firms. Appellants' attorney responded that the Fleming Firm and the referring law firms entered into a joint venture, and thus the Fleming Firm was bound to supply free echocardiograms as promised by other joint venturers. The judge and the appellants' attorney engaged in the following exchange:

THE COURT: If you want to get the cost of the echocardiograms for your clients back, you go get it from [one of the referring lawyers] then, if he's the one that put the ad out there.

[Appellants' attorney]: I hear you on the damages component. I hear you; but right now we're talking about a limine for their statements about them knowing about the free echocardiograms. . . . I mean, they're told it's a free echocardiogram. . . . I mean, it doesn't seem right to me that if his joint venture partner . . . said it's free . . . I mean, that's surprising to me that that wouldn't come in.

THE COURT: Be surprised then.

[Appellants' attorney]: Okay.

THE COURT: . . . I mean, you're twisting the claims, you're trying to generate more money, you know, what I understood to be the basic issue. Every corner we go around, you've dreamed up a new way to squeeze it for a few more bucks, and I'm not getting a good feeling about this.

[Appellants' attorney]: Okay. Well, I don't want to --

THE COURT: Well, don't then, back off.

[Appellants' attorney]: I understand.

THE COURT: What's next, [Defendants' Limine Number] 8?

Appellants argue that the judge's statements that "if you want to get the cost of the echocardiograms for your clients back, you go get it from [another referring lawyer]" and "back off" amount to a pre-trial, sua sponte summary judgment "prohibiting [Plaintiffs] from pursuing their claims against the Fleming Defendants for being improperly charged for their own echos." We disagree. At most, the trial court granted the Fleming Firm's motion in limine on the free echocardiogram issue, which preserves nothing for review. *See Reule v. M&T Mortg.*, 483 S.W.3d 600, 621-22 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998) (motion in limine merely precludes

reference to the subject of the motion without a party's first obtaining a ruling on the admissibility of those matters outside the presence of the jury).

We overrule appellants' first issue.

2. *Exclusionary ruling*

In their second issue, appellants challenge the trial court's exclusion of evidence that appellants were promised free echocardiograms. In an offer of proof, five of the six named trial plaintiffs offered evidence that they were promised a free echocardiogram by law firms other than the Fleming Firm in an effort to recruit clients for fen-phen litigation against Wyeth. The trial judge stated that the evidence was "exclude[d] . . . from jury consideration."

We review the trial court's ruling excluding evidence for an abuse of discretion. *Elizondo v. Krist*, 338 S.W.3d 17, 21 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 415 S.W.3d 259 (Tex. 2013). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Merrill v. Sprint Waste Servs. LP*, 527 S.W.3d 663, 669 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Therefore, we examine all bases for the trial court's decision that are suggested by the record or urged by the parties. *Merrill*, 527 S.W.3d at 669.

In both the trial court and on appeal, appellants contend the evidence of free echocardiogram promises is admissible for one reason: the Fleming Firm entered into joint ventures with the referring firms thereby binding the Fleming Firm to the other firms' representations. Joint venture is a vicarious liability theory. *See St.*

*Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 535-36 (Tex. 2002). A plaintiff must plead vicarious liability. *See Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 264 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Griggs v. Capitol Mach. Works, Inc.*, 690 S.W.2d 287, 295 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (noting that no pleading was filed suggesting any theory of vicarious liability).

Appellants did not plead the joint venture doctrine in connection with their free echocardiogram allegations nor did they request leave to file a pleading amendment to assert joint venture. Thus, we cannot say that the trial court abused its discretion in excluding evidence relating to the referring law firms' alleged statements or conduct. *Accord, e.g.*, *Jones v. Blume*, 196 S.W.3d 440, 447-48 (Tex. App.—Dallas 2006, pet. denied) (lone mention of joint venture in amended motion for summary judgment "does not amount to an assertion of joint venture as a basis for liability"); *Longhurst v. Clark*, No. 01-07-00226-CV, 2008 WL 3876175, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, no pet.) (mem. op.) (because plaintiff did not plead payment, trial court did not abuse its discretion in excluding evidence of payments).

We overrule appellants' second issue.

## B.      Exclusion of a witness and sponsored exhibits

In their third issue, appellants argue the trial court erred by refusing to allow a witness, attorney Steve Kirklin, to testify either as a fact witness or as an expert witness and by excluding exhibits he sponsored.

Kirklin represented appellants when they filed their original petition against the Fleming Firm in April 2010. In 2014, Kirklin withdrew as counsel. Prior to trial, appellants designated Kirklin as an expert witness. However, the trial court

9

refused to allow Kirklin to testify to the jury and excluded certain exhibits on which Kirklin based his opinions.

We review a trial court's decision to admit or exclude a witness from testifying for an abuse of discretion. *See Harris Cty. Appraisal Dist. v. Houston Laureate Assocs. Ltd.*, 329 S.W.3d 52, 56 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We likewise review a trial court's ruling excluding evidence for an abuse of discretion. *Elizondo*, 338 S.W.3d at 21.

### 1. *Kirklin's testimony*

Before trial, appellants designated Kirklin as an expert witness. In response, the Fleming Firm moved to exclude Kirklin as an expert witness. The trial court excluded Kirkin and, during the ensuing offer of proof, Kirklin testified that, in his opinion: George Fleming breached his fiduciary duty by charging the settling clients with echocardiograms on non-qualifying cases; George Fleming failed to fully and fairly disclose all important information related to expenses on non-qualifying cases; the expenses for the echocardiogram program were not fair and equitable to the client; George Fleming failed to act in the utmost good faith and to exercise the most scrupulous honesty by charging for echocardiograms on non-qualifying cases; a reasonable client would not approve of paying for a pro rata share of the firm's expenses on non-qualifying cases; and the foregoing breaches caused appellants to suffer damages.

At the conclusion of Kirklin's testimony, appellants' attorney stated, "We're done with the Bill of Exceptions and we request that Mr. Kirklin's expert testimony be permitted to be seen by the jury and we offer that."[5] The Fleming Firm objected,

---

[5] Two types of offers generally preserve error concerning exclusion of evidence: the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception. *See Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 703 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also* Tex. R. Evid. 103(a)(2) (rule governing offers of proof);

primarily because "it's improper to serve as an expert witness in the case he was formally [sic] counsel in." The trial judge responded, "I understand the rules regarding that," and sustained the Fleming Firm's objection.

Appellants first contend that the trial court should have allowed Kirklin to testify as a fact witness. The record, however, reveals that appellants did not offer Kirklin as a fact witness; they offered him as an expert witness only.[6] Given this, we cannot conclude that the trial court abused its discretion in not allowing Kirklin to testify as a fact witness. *Accord Cont'l Casing Corp. v. Siderca Corp.*, No. 01-02-00442-CV, 2003 WL 853317, at *6 (Tex. App.—Houston [1st Dist.] Mar. 6, 2003, no pet.) (mem. op.) (no abuse of discretion in excluding witness testimony when "the record does not indicate that [the witness] was offered as an expert witness . . . nor does the record indicate that the trial court was appraised of the fact that Continental intended to offer [the witness]'s testimony as expert opinion").

Moreover, Kirklin's statements regarding his beliefs that the Fleming Firm breached its fiduciary duty and as to what a reasonable client would or would not approve go beyond the specific facts of the case and constitute an expert opinion. *See Fleming v. Kinney*, 395 S.W.3d 917, 926, 928-29 (Tex. App.—Houston [14th

---

Tex. R. App. P. 33.2 (rule governing formal bills of exception). Appellants preserved their complaint through an offer of proof under Rule of Evidence 103, though they referred to their offer as a "bill of exceptions" in the trial court. *See* Tex. R. Evid. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.").

[6] Appellants did not request to present Kirklin as a fact witness in the alternative during the offer of proof. While the parties and the trial judge discussed the possibility of Kirklin testifying as a fact witness during the pre-trial limine conference, the judge who presided over the offer of proof was not the same judge who presided over the limine conference, and appellants did not raise the issue to the judge who made the exclusionary ruling. We accordingly constrain our review of appellants' challenge to the exclusionary ruling they obtained from the trial court. Tex. R. App. P. 33.1(a).

Dist.] 2013, pet. denied). It is well-settled that a fact witness cannot testify to matters that will require him or her to render an expert opinion. *See, e.g.*, *Matthews v. S&A Rest. Corp.*, No. 14-98-00172-CV, 2000 WL 963372, at *4 (Tex. App.—Houston [14th Dist.] July 13, 2000, no pet.) (not designated for publication); *Missouri-Kansas-Texas R.R. Co. v. Alvarez*, 703 S.W.2d 367, 371 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

Alternatively, appellants argue that the trial court abused its discretion in excluding Kirklin as an expert witness. Trial courts can admit testimony addressing "scientific, technical, or other specialized knowledge" from a "witness qualified as an expert by knowledge, skill, experience, training, or education" when doing so "will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. Expert testimony is admissible only if the expert is qualified and the evidence is relevant to the issues in the case and based upon a reliable foundation. *Houston Laureate Assocs.*, 329 S.W.3d at 57. This rule applies to expert testimony addressing the duties attorneys owe to their clients. *Kinney*, 395 S.W.3d at 926 (citing *Greenberg Traurig, P.C v. Moody*, 161 S.W.3d 56, 93-94 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

The Fleming Firm moved to exclude Kirklin from testifying as an expert on two grounds: (1) he was not qualified as an expert; and (2) his opinions were not based on a reliable foundation. As to the latter ground, the Fleming Firm argued that Kirklin's testimony was unreliable because: he was previously counsel of record and had a financial interest in the case; he had "wag[ed] war" against the Fleming Firm by filing thousands of State Bar ethics complaints stemming from the same settlement; and he offered nothing more than subjective beliefs that are not substantiated with objective, evidence-based support.

The extent of appellants' argument on appeal as to Kirklin's role as an expert witness is the following:

> In addition to the foregoing fact testimony, Steve Kirklin offered a few expert opinions at the end of his testimony that he believed the Fleming Defendants breached their fiduciary duties and that the expenses they charged were NOT reasonable. Steve Kirklin was qualified to testify about these matters, and he should have been able to give this testimony in the presence of the jury.

(Internal footnotes omitted).

Although appellants superficially argue that Kirklin was qualified to testify as an expert witness, appellants do not address the Fleming Firm's argument that Kirklin's opinions were not reliable. "When an appellee objects to evidence on several independent grounds and, on appeal, the appellant complains of the exclusion of the evidence on only one of those grounds, the appellant waives any error by failing to challenge all possible grounds for the trial court's ruling that sustained the objection." *Stamatis v. Methodist Willowbrook Hosp.*, No. 14-15-00829-CV, 2016 WL 4404502, at *2 (Tex. App.—Houston [14th Dist.] Aug. 18, 2016, no pet.) (mem. op.); *see also Najera v. Recana Sols., LLC*, No. 14-14-00332-CV, 2015 WL 4985085, at *7-8 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.) (same) (citing *Gulley v. Davis*, 321 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.)). Accordingly, we conclude that appellants have waived any challenge to the trial court's ruling excluding Kirklin from testifying as an expert witness. *See In re D.J.R.*, 319 S.W.3d 759, 764 (Tex. App.—El Paso 2010, pet. denied) (when appellant's appellate challenge was limited to expert's qualification, any argument regarding reliability was waived).[7]

---

[7] In our view, the substance of the Fleming Firm's objections was directed primarily to Kirklin's purported bias as opposed to the reliability of his opinions. Kirklin's potential bias as

## 2. *Sponsored exhibits*

During the offer of proof, Kirklin sponsored three categories of exhibits, which the court excluded. The exhibits are: (1) settlement documents Kirklin obtained from fen-phen claimants who settled with Wyeth and were represented by firms other than the Fleming Firm; (2) Kirklin's analyses, summaries, and charts of information purportedly based on the other claimants' settlement documents; and (3) an email between Kirklin and one of Wyeth's attorneys. Kirklin relied on these exhibits to support his assertions that other firms did not deduct the cost of echocardiograms for "rejected cases" (i.e., claimants whose echocardiograms did not exhibit the requisite heart damage to pursue individual suits against Wyeth), that the Fleming Firm's deductions were greater in amount than other firms' deductions, and that Wyeth did not reach a more favorable settlement with the Fleming Firm compared to other firms based on the Fleming Firm's echocardiogram program.

The Fleming Firm objected to these exhibits on grounds of: (1) relevance, (2) undue prejudice or confusion, and (3) hearsay. *See* Tex. R. Evid. 401, 403, 802. In its appellees' brief, the Fleming Firm also argues that appellants failed to authenticate the other claimants' settlement packets. The trial court excluded the exhibits at the conclusion of the offer of proof. On appeal, appellants argue that these exhibits should have been admitted, regardless of Kirklin's role as the sponsoring witness.

---

appellants' former counsel is a credibility issue, not an admissibility issue. *See, e.g., Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (allegation of bias tests witness's credibility and allows the jury to determine weight of witness's testimony). Regardless, the Fleming Firm asserted two objections to Kirklin's proffered expert testimony, and appellants at most challenge only one ground on appeal. *Accord, e.g., Tex. Parks & Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 693 n.1 (Tex. 2007) (per curiam) (because appellant did not challenge opponent's characterization of its claims in either trial court or appellate briefing, court did not address alternative characterization).

We first address the Fleming Firm's argument that appellants failed to authenticate the other claimants' settlement packets. Though the Fleming Firm did not assert a lack of authentication in the trial court as a basis for exclusion, this court has held that a complete absence of authentication is a defect of substance that is not waived by a failure to object at trial and may be urged for the first time on appeal. *In re Estate of Guerrero*, 465 S.W.3d 693, 706-08 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc).

The settlement packets from other claimants are not authenticated and are thus inadmissible. *See Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 308 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("The Texas rules of evidence require, as a predicate to admissibility, that evidence be properly authenticated or identified.") (citing Tex. R. Evid. 901). Kirklin did not testify that each settlement packet "is what it is claimed to be." *See, e.g.*, Tex. R. Evid. 901(b)(1). He did not testify how he obtained or received the packets, or that the packets' contents were accurate and unaltered. Because appellants did not demonstrate that the settlement packets were authentic, we cannot say that the trial court abused its discretion in excluding them. Tex. R. Evid. 901(a); *see also Gragg v. Tarantino Props., Inc.*, No. 01-01-01150-CV, 2002 WL 31771249, at *2 (Tex. App.—Houston [1st Dist.] Dec. 12, 2002, pet. denied) (mem. op.).

Appellants argue that Kirklin's summaries of the settlement packets were admissible under Texas Rule of Evidence 1006, which provides that a proponent may use a summary or chart to prove the content of voluminous writings that cannot be conveniently examined in court. Tex. R. Evid. 1006. Admissibility of summaries under rule 1006 requires that (1) the records are voluminous, (2) they have been made available to the opponent for a reasonable period of time to afford inspection and an opportunity for cross-examination, and, as determinative here, (3) the

supporting documents are themselves admissible in evidence. *Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 812-13 (Tex. 1982); *see also* Goode & Wellborn, 2 Tex. Prac., Texas Rules of Evidence § 1006.1 (4th ed. 2018) ("Rule 1006 is indistinguishable in substance from the *Duncan Development* formulation."). A proper foundation for a summary "must establish the admissibility of the underlying documents and the accuracy of the summary." *Leander v. Fin & Feather Club*, No. 06-10-00135-CV, 2012 WL 75815, at \*8 (Tex. App.—Texarkana Jan. 11, 2012, no pet.) (mem. op.); *see also W-W Masonry, Inc. v. Hill Constrs., Inc.*, No. B14-90-00518-CV, 1991 WL 35057, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 14, 1991, no writ) (not designated for publication); 2 Tex. Prac., Texas Rules of Evidence § 1006.1.

Because we have determined that the other claimants' settlement packets were unauthenticated and inadmissible, we conclude that the trial court did not abuse its discretion in excluding Kirklin's proffered summaries under Rule 1006 as well.[8]

Finally, we address Kirklin's email to Wyeth's attorney. According to appellants, the Fleming Firm has claimed during this and related litigation that it successfully relied on the strength of its echocardiogram program during settlement negotiations with Wyeth. To disprove that claim, appellants offered Kirklin's email, in which he sought and obtained confirmation from Wyeth's attorney that "the Fleming VHD Opt-Out cases were not penalized (or benefitted) based on the quality (or lack thereof) of Fleming's echo program."

---

[8] Our holding that the trial court did not abuse its discretion in excluding Kirklin from testifying further bolsters the court's exclusion of the exhibits Kirklin sponsored. Although Rule 1006 does not specify that the person who prepared a summary or chart must testify, "'[a]s a practical matter it would be very difficult to authenticate the chart [or] summary . . . or to establish its accuracy without calling as a witness the person who is responsible for its preparation.'" 2 Tex. Prac., Texas Rules of Evidence § 1006.1 (quoting 6 McLaughlin, Weinstein & Berger, Weinstein's Federal Evidence § 1006.05[3] (2d ed. 1998)).

16

The statement of Wyeth's attorney in the email is hearsay. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d), 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004). Kirklin authenticated the email under the business-records exception to the general rule prohibiting hearsay. *See* Tex. R. Evid. 803(6). Under the business-records exception, evidence that is otherwise inadmissible as hearsay may be admissible if the proponent of the evidence demonstrates that: (1) the record was made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such a record; (3) the record was created at or near the time of the event recorded; and (4) the record was created by, or from information transmitted by, a person with knowledge who was acting in the regular course of business. *Id.*

Evidence authenticated as a business record, however, may be inadmissible nonetheless. "The theory underlying the business-records exception [to the hearsay rule] is that there is a certain probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities." *Ortega v. Cach, LLC*, 396 S.W.3d 622, 629 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Therefore, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," even a properly authenticated record may be inadmissible. Tex. R. Evid. 803(6). Lack of trustworthiness is most frequently found when the record was prepared in anticipation of litigation. *See Ortega*, 396 S.W.3d at 630 (citing *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993)).

In this case, Kirklin did not email Wyeth's attorney about the Fleming Firm's echocardiogram program and its purported role in negotiations until May 2014, which is eight years after the settlement and more than four years after Kirklin filed the present suit against the Fleming Firm. Moreover, Kirklin was still counsel of record for appellants at the time of the email. Although appellants offered Kirklin's email as a business record of Kirklin's law firm, it is apparent that it was prepared for the purpose of this litigation. The fact that Kirklin emailed Wyeth's attorney only after he had instituted claims against the Fleming Firm, and while he was still representing appellants on those claims, shows that the email was made for purposes of litigation and, therefore, was not admissible under the business-records exception. *See id.* at 631; Tex. R. Evid. 803(6); *see also Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 714-15 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (doctor's letter submitted to a party's attorney ten years after cause of action accrued and ten days before summary judgment hearing did not qualify as a routine entry in patient's medical history and was inadmissible under business-records exception). On these facts, we hold that the trial court did not abuse its discretion in excluding Kirklin's email from evidence.

In any event, appellants have not addressed on appeal the Fleming Firm's objection that the exhibits' probative value was substantially outweighed by a danger of unfair prejudice to the firm or of confusing the issues for the jury. Tex. R. Evid. 403. Because the appellants have not challenged all possible grounds for the trial court's exclusion of this evidence, we would be justified in concluding that appellants waived any challenge to the trial court's exclusionary ruling. *Stamatis*, 2016 WL 4404502, at *2.

*       *       *

We overrule appellants' third issue.

18

## C.	Alleged breach of the MSA

According to appellants, they asserted two separate and independent contract claims: (1) the Fleming Firm breached each appellant's individual fee agreement by deducting unreasonable expenses from their settlement payouts; and (2) the firm also breached the MSA by failing to distribute the settlement amounts in accordance with the MSA.  As to the latter allegation, appellants cite the MSA's requirement that the Fleming Firm comply with the Texas Disciplinary Rules of Professional Conduct in allocating the settlement proceeds.[9]  The only disciplinary rule appellants claim the Fleming Firm violated is rule 1.08(f), which is a disclosure provision governing aggregate settlements and provides:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, . . . unless each client has consented after consultation, **including disclosure of the existence and nature of all the claims** or pleas involved and of **the nature and extent of the participation of each person in the settlement**.

Tex. Disciplinary R. of Prof'l Conduct 1.08(f) (emphasis added).

Although the trial court submitted a jury question on appellants' claim that the Fleming Firm breached appellants' respective fee agreements, the court refused to permit appellants to develop their breach of contract theory based on the MSA and did not submit a jury question on breach of the MSA.  The Fleming Firm objected to appellants' attempts to pursue such a theory on the ground that appellants were not third-party beneficiaries to the MSA and could not enforce its terms.  The

---

[9] Specifically, the MSA required the Fleming Firm to:

comply with any and all applicable or potentially applicable rules of legal ethics, including but not limited to Rule 1.08 of the ABA Model Rules of Professional Conduct or its applicable state counterpart(s) [disciplinary rule 1.08(f)] in connection with this Settlement Agreement.

trial court agreed with the Fleming Firm. The record does not indicate that appellants argued that they were parties to the MSA.

In their fourth issue on appeal, appellants argue that the trial court erred by "rul[ing] as a matter of law" that the MSA is not a third-party beneficiary agreement, "thereby prohibiting the Harpst Plaintiffs from pursuing their breach of contract claims on the MSA." The Fleming Firm responds that appellants are not third-party beneficiaries to the MSA or, alternatively, that the trial court's ruling is harmless.

1. *Preservation*

Before we address the merits, we first consider the Fleming Firm's contention that appellants did not preserve their argument in the trial court. At the pre-trial hearing, the trial judge initially indicated that he did not consider appellants to be beneficiaries of the MSA. Later, after trial commenced, appellants requested a specific ruling on whether they could present the MSA to the jury as a contract to which appellants were third-party beneficiaries. The Fleming Firm argued that appellants should not be allowed to proceed on their breach of the MSA claim, and the trial court "sustained" "the objection." We construe the trial court's ruling as overruling appellants' request to proceed on their breach of the MSA theory. Accordingly, appellants preserved error on this point. *See* Tex. R. App. P. 33.1(a).

2. *Harmless error*

Assuming without deciding that the trial court erred in ruling that appellants are not third-party beneficiaries to the MSA, any error is harmless on this record. We reach this conclusion due to the nature of the jury's finding in response to the breach of fiduciary duty question.

The jury question on fiduciary duty asked:

20

Did George Fleming and F&A comply with their fiduciary duty to the plaintiffs?

As the plaintiffs' attorneys, George Fleming and F&A owed the plaintiffs a fiduciary duty. To prove that they complied with their duty, George Fleming and F&A must show:

1. The transactions in question were fair and equitable to the plaintiffs; and

2. George Fleming and F&A made reasonable use of the confidence that the plaintiffs placed in them; and

3. George Fleming and F&A acted in the utmost good faith and exercised the most scrupulous honesty toward the plaintiffs; and

4. George Fleming and F&A placed the interests of the plaintiffs before their own and did not use the advantage of their position to gain any benefit for themselves at the expense of the plaintiffs; and

5. George Fleming and F&A fully and fairly disclosed all important information to plaintiffs concerning the transactions.[10]

The jury answered "yes" as to each appellant. The nature of the jury's finding warrants emphasis in at least three respects. First, the question properly burdened the Fleming Firm with proving that it complied with its fiduciary obligations to its former clients rather than burdening the clients with proving the firm failed to comply. *See Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); PJC 104.2. Second, in finding that the firm complied with its fiduciary duty, a relationship characterized by "integrity and fidelity,"[11] the jury necessarily found that the Fleming Firm exercised the utmost good faith and scrupulous honesty toward appellants, did not prioritize its own interests at the expense of appellants' interests, and "fully and fairly disclosed all important

_____

[10] The fiduciary duty question tracks the pattern question set forth in the Texas Pattern Jury Charges. *See* Tex. Pattern Jury Charges: Business, PJC 104.2 (2016).

[11] *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

information . . . concerning the transactions."[12]   Third, appellants do not challenge the legal sufficiency of the evidence to support the jury's finding.  Thus, the Fleming Firm's compliance with its fiduciary duties as to these appellants is conclusively established on this record.

Appellants' breach of the MSA theory focuses on the firm's alleged violations of disciplinary rule 1.08(f).  The disciplinary rules and an attorney's fiduciary obligations are not equivalent standards.  *See, e.g.*, *Kinney*, 395 S.W.3d at 931 (holding trial court erred in admitting testimony "equating disciplinary rule violations with *per se* breaches of fiduciary duties").  However, the jury's finding that the Fleming Firm proved by a preponderance of the evidence that it "disclosed all important information to plaintiffs concerning the transactions"[13] and acted with the utmost good faith and scrupulous honesty toward appellants fatally undermines appellants' claim that the firm violated rule 1.08(f) by failing to "disclos[e] . . . the existence and nature of all the claims . . . involved [in the settlement] and of the nature and extent of the participation of each person in the settlement."  Tex. Disciplinary R. of Prof'l Conduct 1.08(f).  Whereas the disciplinary rule concerns only disclosure of the existence and nature of all claims involved in a settlement and the nature and extent of each claimant's participation in a settlement, the Fleming Firm's fiduciary duty required full and fair disclosure of "all important information" concerning the challenged transactions in their entirety.  Because the jury found that the Fleming Firm complied with a disclosure standard broader than, and inclusive of, that contemplated by rule 1.08(f), that finding negates recovery for appellants'

---

[12] The fiduciary relationship between attorney and client requires "most abundant good faith," absolute perfect candor, openness, honesty, and the absence of any concealment or deception. *Id*.

[13] The charge did not define the term "transactions" but the parties appear to agree that it refers to at least payment of the settlement and execution of settlement documents.

breach of the MSA claim. *See, e.g.*, *Smith v. Moody Gardens, Inc.*, 336 S.W.3d 816, 821 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (jury's negative finding on statutory premises claim rendered harmless trial court's allegedly erroneous summary judgment on plaintiff's common-law premises and negligence claims). Accordingly, any error by the trial court in not allowing appellants to present their breach of the MSA theory is harmless on this record. *See Zarate v. Rodriguez*, 542 S.W.3d 26, 40 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (jury's negative finding on affirmative claim for fraud rendered harmless trial court's erroneous summary judgment on defense of fraud, which "contain[s] similar elements").

We overrule appellants' fourth issue.

## D.  Discovery request

In their fifth and final issue, appellants argue that the trial court abused its discretion by refusing to order the Fleming Firm to respond to a discovery request, unless the plaintiffs "paid for the defendants' attorneys' fees."

We review a trial court's discovery rulings for an abuse of discretion. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009); *Reynolds v. Reynolds*, No. 14-14-00624-CV, 2015 WL 7456059, at *3 (Tex. App.—Houston [14th Dist.] Nov. 24, 2015, no pet.) (mem. op.). To preserve a complaint for appeal, a party must present to the trial court a timely request, motion, or objection and obtain a ruling that appears in the record. Tex. R. App. P. 33.1(a).

Appellants requested production of certain documents relating to the 35,000 "rejected" echocardiograms—i.e., the tests that did not meet the MDL court's criteria for pursuing an opt-out, individual claim against Wyeth. According to appellants, the Fleming Firm refused to produce this evidence, so appellants filed a motion to compel. A motion to compel is included in our record, but we have not

located a corresponding order ruling on the request. Appellants assert that "the trial court ruled that it would enter such an order but only on the condition that the Harpst Plaintiffs pay the Fleming Defendants' attorneys' fees incurred in monitoring the Harpst Plaintiffs while they examined these documents," but appellants have not cited us to an order in the record. Instead, appellants rely upon their counsel's declaration, which stated that "[d]uring the oral hearing [on the motion to compel], the Court agreed to order production and/or inspection of the requested documents, but only on the condition that the Plaintiffs pay for the Defendants' attorneys' fees in making them available." Appellants' counsel also stated in the declaration that he objected to the court's ruling but was overruled. Again, we have reviewed the record and see no such rulings included in either the clerk's record or reporter's record.[14]

Because the record does not include a ruling adverse to appellants, nothing is presented for our review. Tex. R. App. P. 33.1(a); *Hicks v. Hicks*, No. 01-15-01011-CV, 2016 WL 2342913, at *3 (Tex. App.—Houston [1st Dist.] May 3, 2016, no pet.) (mem. op.) ("A party's failure to obtain a pretrial ruling on a discovery dispute existing before the beginning of trial constitutes a waiver of the issue on appeal.").

We overrule appellants' fifth appellate issue.

---

[14] A letter filed in the trial court by appellants' counsel indicates that the court may have held a hearing on the motion to compel, but we have no record of any hearing. Appellants also attached a proposed order to the letter, but the order was never signed.

## Conclusion

Having overruled all of appellants' issues presented for our review, we affirm the trial court's judgment in cause number 2010-25097-A.

/s/    Kevin Jewell
        Justice

Panel consists of Justices Busby, Brown, and Jewell.