In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-19-00312-CV
_____

### BRENDA KAY RIVERS, Appellant

### V.

### HORRACE RAY PAGE AND FLOYD HERMAN PAGE, Appellees

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV611550

### MEMORANDUM OPINION

Brenda Kay Rivers, Appellant, appeals a final order regarding the partitioning of real property between Rivers and her brothers, Horrace Ray Page and Floyd Herman Page (collectively "Appellees" or "the Brothers"). We affirm.

Background

Rivers and the Brothers acquired certain undivided interests in their family's acreage, house, and improvements in Liberty County ("the property"). In 2016, the Brothers filed an Original Petition to Partition Real Property against Defendant

1

Rivers, seeking the partitioning of approximately 42 acres, asking the trial court to appoint three commissioners to partition the interests of Rivers and the Brothers, and requesting that the commissioners file their report. Rivers filed her Defendant's Original Answer and Counter Petition for Partition, entering a general denial and asserting that her parents erected improvements on the 42 acres and that her mother's will, admitted to probate in 2016, bequeathed to Rivers the house on the 42-acre tract.[1] Rivers believed that the property, except for the house, was susceptible to fair and equitable partition, but asserted that the house should be awarded to her in accordance with her mother's wishes. She also requested that the trial court appoint three commissioners to partition the property and to file their report. The Brothers filed an amended petition, describing the property to be partitioned as a 46-acre tract, composed of a 44-acre tract, a 2.33-acre tract, and a 2.0-acre tract, together with improvements located on the 46 acres.

The trial court signed an agreed Decree of Partition stating that Rivers and the Brothers had appeared for trial and announced that they had reached an agreement, the agreement was presented to the trial court, and the trial court approved the parties' agreement. With respect to the 46-acre tract and all improvements on that

---

[1] In Defendant's Original Answer and Counter Petition for Partition, Rivers also sought partition of a separate 59.9391-acre tract in Liberty County. The parties settled that part of the partition suit, as acknowledged by the trial court's judgment in this case, and that tract was not part of the Decree of Partition at issue in this appeal.

2

tract, the trial court's Decree of Partition stated, in part, that, having accepted and approved the parties' agreement regarding the partition of the 46 acres, the trial court ordered that the Brothers and Rivers each own a one-third undivided interest in the 46 acres, the 46 acres are susceptible of partition, and the trial court named and appointed three individuals as commissioners to partition the property equally by fair market value. The Decree of Partition ordered the commissioners to first have the 46 acres surveyed by a qualified Texas-licensed land surveyor selected by the commissioners, and then the commissioners were to make their partition of the property so that Rivers's one-third portion of the fair market value of the property shall be partitioned to her and include the house, garage, water well, and septic system thereon so as to equalize the fair market value to be received by each of the three parties since Rivers will be awarded her portion of the property with the house, garage, water well, and septic system thereon. The Decree ordered the remainder of the property (with all improvements thereon) to be partitioned in one tract that will be held and owned in equal undivided interests by the Brothers. The Decree directed that after the commissioners' report is filed and approved by any Court order, the surveyor shall prepare another plat depicting and describing the portions of the property and improvements to each of the Brothers and Rivers. The Decree also instructed the district clerk to issue a writ of partition.

On November 1, 2018, the three appointed commissioners signed their Commissioners' Report. The Commissioners' Report stated that the commissioners appointed a registered Texas land surveyor who determined that the property in question contained only 44.5866 acres, and the Commissioners' Report stated the commissioners had partitioned the property as follows:

4.

We proceeded to partition the 44.5866 acres and improvements in accordance with the Court's directions contained in the Decree, having due regard to the division, quantity and advantages of each share and to the end that the shares be apportioned in equal value as nearly as could be. We determined the fair market value of the land at $6,000.00 per acre or $267,519.60. We determined the fair market value of the 44.5866 acres of land and all improvements thereon at $392,520.00.

5.

We partition and allocate to Brenda Kay Rivers the 3.47333 acres of land more particularly described in the attached Exhibit "B" (consisting of 2 pages). Exhibit "B" is attached to this Report and is fully incorporated herein by reference. In addition to the 3.47333 acres of land hereby partitioned to Brenda Kay Rivers, we include and partition to her all of the following improvements on such 3.47333 acres:

  a. The wood frame house;
  b. The pump house, pump and water system;
  c. The wood frame garage and attached metal shed;
  d. The stand-alone wooden shed;
  e. Propane tank;
  f. Satellite dish;
  g. The septic/sewer system; and,
  h. All fencing.

6.

We have assessed and determined that the fair market values of the 3.47333 acres and improvements thereon that we have partitioned and allocated to Brenda Kay Rivers are:

  a. 3.47333 acres of land -----------------------$20,840.00

4

> b. The wood frame house and all other improvements listed in the above paragraph 5. -----------$110,000.00
> Total Fair Market Value -------------------$130,840.00

> 7.

> We partition and allocate to Floyd Herman Page and Horace Ray Page, in equal undivided interests, the 41.1133 acres of land that is more particularly described in the attached Exhibit "C" (consisting of 5 pages) that is attached to this Report and fully incorporated herein by reference. In addition to the 41.1133 acres of land hereby partitioned in equal, undivided interests to Floyd Herman Page and Horace Ray Page, we include and partition to them, in equal, undivided interests, all of the following improvements on such 41.1133 acres:
> > a. The metal barn;
> > b. The metal shop;
> > c. The old sawmill; and,
> > d. Any other buildings or structures, as well as any fences.

> 8.

> We have assessed and determined that the fair market values of the 41.1133 acres and improvements partitioned and allocated in equal undivided interests to Floyd Herman Page and Horace Ray Page are as follows:
> > a. 41.1133 acres of land ----------------------$246,680.00
> > b. All improvements described in The above paragraph 7. -------------------$ 15,000.00
> > Total Fair Market Value ------------------$261.680.00

On November 27, 2018, Rivers filed an Objection to Report of Commissioners requesting that the trial court reject the Commissioners' Report alleging the division of land was erroneous because the "70 year old deteriorated frame house" awarded to her was valued at twice its actual market value and the fair market value of the acreage should have been $8,346.79 per acre instead of $6,000 per acre. According to Rivers:

5

> [S]aid report is unequal, unfair and unjust in that the actual market value of the 44.8566 acres which is the subject of this partition suit is $434,655, and the value of the 3.4733 acres and 70 year old farm house set aside to Brenda Kay Rivers is $83,991.15 ($55,000 + $28,991.15) and she is entitled to property worth one third (1/3) or $144,835.00.
>
> Plaintiffs are entitled to property worth $289,820 as their two thirds (2/3) share of the subject property.
>
> That such error or inequality if not corrected, is material and injures this objector, Brenda Kay Rivers in the amount of $60,843.35.

The Brothers filed a Response to Rivers's Objection(s) to Commissioners' Report.

On June 5, 2019, the trial court held a hearing and bench trial regarding the objections and confirmation of the Commissioners' Report.[2]

Prior to evidence being introduced, the following exchange occurred between Rivers's counsel and the trial court:

> [Defense counsel]: I'm ready to put on testimony that I think will show clearly that the value of the property has been set aside to my client; and the commissioners' report is nowhere close to the actual value, 1/3 of the value of the whole property.
>
> I believe last time we were here you made a comment or two about how probably if we were doing it over we would give them a little better instructions.
>
> THE COURT: No. If we were doing it over, we would try the issue of value of improvements as part of equities in the partition; and then the commissioners would be instructed on value that was determined at that hearing.

---

[2] In her appellate brief, Rivers states that although she disputed the value of the house, "the error in the commissioners' valuation of the land, alone, is enough to reverse the trial court's partition order and remand for a new partition[,]" and her sufficiency challenge on appeal relates to "the valuation of the land[.]" Accordingly, in our memorandum opinion we only discuss the evidence presented at trial related to the value of the land.

. . . . Now we have it where it's agreed the commissioners will assess value and also make an equitable division of the property. Now we have got a complaint about the value of the improvements.

[Defense counsel]: Not just the improvements; the land as well, Judge. I don't want to sugarcoat it but in our opinion it looks like the land got lowballed and the house got raised up high.

I had no input with the commissioners whatsoever. I'm not saying anybody else did, but I'm telling you I didn't have any.

THE COURT: Your burden is to show that the report of the commissioners in the partition that's actually proposed by that report is erroneous in a material respect that resulted in an unjust division of the property based on value.

[Defense counsel]: Yes, sir. I'm prepared to do that.

. . . .

[Defense counsel]: I think we both subpoenaed the commissioners, and you advised us we wouldn't be cross-examining any of the commissioners. If we can't do that, I don't know how else to get at value.

THE COURT: In my judgment they are not proper witnesses. They speak through their report and it's their report that is the subject matter of this contest and the burden is on the contestee, contestor to show that there was a material erroneous assessment with respect to value.

[Defense counsel]: Yes, sir.

THE COURT: That's all we hear in these things. The commissioners' report has been filed.

[Defense counsel]: That's right.

Randy Ellisor, an appraiser licensed in Texas, testified that he is employed as a Justice of the Peace in San Jacinto County and has an appraisal business there that

has seven employees. Ellisor testified that he completes approximately three hundred appraisals in a year and has testified ten or twelve times in district courts regarding his appraisals. According to Ellisor, Liberty County is one of seven counties where he performs appraisals, he performs fifteen or sixteen appraisals in Liberty County in a year, and he is experienced with property values in Liberty County.

Ellisor testified that he appraised the property involved in this case by evaluating the property and improvements and then using a sales comparison approach where he compares confirmed sales in the geographic area and compares those to the property in this case. Ellisor looked at thirty-two sales over a twenty-four-month period online to find comparable sales. As to the value of the land, Ellisor testified that in his opinion the 44-acre tract's market value is $9,750 per acre. In determining this value, Ellisor explained he located comparable sales with greater than 44 acres as well as sales with less than 44 acres, which is a method called "bracketing." Ellisor testified that he found comparable tracts that sold for $9,300, $11,000, and $12,000 per acre. Ellisor valued the home and the three acres next to it at approximately $70,000, and the entire 44-acre tract with the house at $434,000. Ellisor's appraisal report was admitted into evidence.

On cross-examination, Ellisor acknowledged that to the best of his knowledge all three "comps" he used did not have a house on them. When asked if he called to

8

confirm the accuracy of the Multiple Listing Service online information for the sales price of each of the three comps, Ellisor responded that it would be his normal practice to do so but that he does not specifically remember doing that in this case. Ellisor explained his practice was to adjust the comps to reflect the value of the improvements on the subject property to "try to bring everything to an equal position." When asked about the timber visible from the pictures of one of the comps, Ellisor acknowledged that he did not give the timber any value on the comp because he did not have extensive experience valuing timber. He also admitted that the land at issue in this suit did not have timber on it. He testified that when he visited the property in this suit, he did not enter the large workshop or the barn, he was not aware that there was a low spot on the property, and Rivers did not mention a low spot when he met her on the property. Ellisor testified he spent over two hours at the property, but he admitted that he did not walk the whole property and that he only "walked it to the extent that I needed to understand the layout, the topography, and any improvements that were on there." Ellisor testified that he was not aware of a sale of acreage on FM 1008 that was in the same school district.

Floyd Page testified that the land involved in this suit was his father's property prior to when his father married Floyd's mother, and they built the house on the land after they were married. Floyd testified that he grew up in the house that is part of the partition suit and he has been all over the subject property. Floyd referred to the

9

survey of the property that was admitted into evidence and testified that "[p]robably 6 acres[]" of the land on the "east line" is low, floods, and "stays wet 80 percent of the time." Floyd testified that the six acres has been low since he and his siblings grew up and that the low area could not be put to any use.

According to Floyd, when Ellisor came out to the property, Floyd was at the shop on the property and Rivers was at the property too, but Ellisor did not talk to Floyd. Floyd testified he did not see Ellisor walk over to the side of the property where the low area is located nor did Floyd see Ellisor go into the house.

Floyd testified that he has been in the logging business for approximately forty years, and he has bought and sold a lot of land. Floyd testified that six months prior to trial he sold 88 acres of high land on FM 1008 that fronts the highway and has timber on it for $6,500 an acre. According to Floyd, the land he recently sold was six miles from Highway 321 and although there were no structures on it, several houses could be built on the land.

Floyd testified he was there when the commissioners came out to the house and he showed them around but did not talk much to them. According to Floyd, the commissioners were on the property about an hour and spent fifteen to twenty minutes inside the house.

Rivers testified that she lives in Salado, Texas, which is about 200 miles away from her parents' home, and she has been away for about twenty years. She was at

10

the house when Ellisor looked at it. Rivers testified that she believes the land is worth $12,000 per acre "just by hearing people selling and buying out there[.]" She acknowledged that there is a "wet spot[]" on the property, but she believed it to be only about two acres. According to Rivers, she paid some of the taxes on the property and, at the time of trial, she was in the process of protesting the appraisal district's valuation of the house, but she did not protest the appraisal district's valuation of the land at $188,000.

After hearing the testimony and argument, the trial court overruled Rivers's objections to the Commissioners' Report, confirmed the Commissioners' Report, and set the matter for entry of final judgment. Rivers later filed a Motion for Continuance and Motion for New Trial. On July 2, 2019, the trial court signed a Final Order Denying and Overruling the Defendant's Objections to the Commissioners' Report and Confirming Commissioners' Report and Assessing Costs. Rivers filed an Amended Motion for New Trial and the Brothers filed Responses to Defendant's Motion for New Trial and First Amended Responses to Defendant's Amended Motion for New Trial. After a hearing on Rivers's Amended Motion for New Trial, the trial court denied Rivers's motion, and she appealed.

## Issues on Appeal

In her first appellate issue, Rivers argues that the trial court erred by accepting the Commissioners' Report. According to Rivers, there is no legally sufficient

11

evidence to support the commissioners' valuation of the land, their valuation is against the great weight and preponderance of the evidence, and the erroneous valuation resulted in an "unequal and unjust" partition. In her second issue, Rivers argues the trial court erred by refusing to allow Rivers to question the commissioners and by treating the Commissioners' Report itself as evidence of the correctness and fairness of the report. Rivers contends that the trial court's refusal to allow the commissioners' testimony was arbitrary and unguided by legal principles and was error that prejudiced Rivers and adversely affected the fairness of the proceeding.

Standard of Review and Applicable Law

The Texas "Rules of Civil Procedure set forth a two-stage process for the partition of real estate[,]" and each stage leads to a final, appealable judgment. *Bowman v. Stephens*, 569 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing Tex. R. Civ. P. 756-771; *Yturria v. Kimbro*, 921 S.W.2d 338, 341-42 (Tex. App.—Corpus Christi 1996, no writ)). In the first stage, the trial court's judgment determines whether the property is susceptible to partition in kind, decides the fractional interest of each joint owner, resolves all questions of law or equity affecting title, and determines the value of improvements to provide for the adjustment of equities between the parties. *See id.* (citing Tex. R. Civ. P. 761; *Yturria*, 921 S.W.2d at 341-42). As a result, arguments about the existence and value of improvements or equitable claims that a particular party should receive a

12

particular tract are resolved in the first stage of the proceedings. *Id.* (citing *Yturria*, 921 S.W.2d at 342). If the trial court determines that the property is susceptible to partition in kind, then it may appoint commissioners to divide the property in accordance with the trial court's equitable and legal determinations. *Id.* (citing *Yturria*, 921 S.W.3d at 341-42).

"In the second stage, the commissioners consider the property's characteristics and evaluate objective considerations for dividing the property to retain the partitioned tracks' highest value." *Bowman*, 569 S.W.3d at 222 (citing *Yturria*, 921 S.W.2d at 343). The commissioners determine the "exact manner of valuing the real property" and the appropriate method of "dividing that property into shares among the parties[.]" *Yturria*, 921 S.W.2d at 342. Because the commissioners lack judicial powers, they must rely on the trial court's instructions and its legal and equitable determinations from the first stage in making their decisions. *Id.* Ordinarily, equitable claims that favor awarding a specific portion of a particular tract to a particular party, and issues regarding the existence and value of improvements, are determined in the partition proceeding's first stage. *Bowman*, 569 S.W.3d at 221-22 (citing *Yturria*, 921 S.W.2d at 342-44). And, during the second stage, the "'exact manner of valuing the real property'" and appropriate method of "'dividing that property into shares among the parties is accomplished by the commissioners.'" *Id.* at 223 (quoting *Yturria*, 921 S.W.2d at 342). Here, as reflected

13

in the agreed Decree of Partition, the parties' agreement included an agreement that the value of the improvements would be determined by the commissioners, as well as the manner of valuing the real property. The Decree was entered as a final judgment and that judgment was not appealed.

Once the commissioners have made their decision, they must submit a report, under oath, to the trial court, stating their recommendations for the actual property partition. Tex. R. Civ. P. 766, 769. Any party objecting to the commissioners' report must file objections within thirty days, and the trial court shall hold a trial on the objections. Tex. R. Civ. P. 771. The party objecting to the report has the burden of proving that the report is materially erroneous or that the division of property is unequal or unjust. *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ). If the trial court overrules the objections to the commissioners' report, if any, and the report is otherwise materially correct, the trial court may approve the report in a second judgment. *See Bowman*, 569 S.W.3d at 222. That said, the trial court's judgment must reject the report and appointment of new commissioners if the trial court sustains an objection to it, finding it to be "erroneous in any material respect, or unequal and unjust[.]" Tex. R. Civ. P. 771. Generally, a commissioners' report will not be set aside in the absence of evidence showing inequality of market value of the shares or other indication of partiality on the part of the commissioners. *See Roberts v. Philpot*, 435 S.W.2d 614, 615 (Tex. App.—

14

Tyler 1968, no writ). Where the testimony raising such issues is conflicting, the commissioners' report approved by the trial court may not be set aside on appeal. *See id.*

On appeal, Rivers challenges the legal and factual sufficiency of the evidence supporting the trial court's final judgment. The trial court's findings in a partition suit, as in the trial of all other cases, may be attacked on appeal for legal and factual sufficiency. *Carson v. Hagaman*, 884 S.W.2d 194, 198 (Tex. App.—Eastland 1994, no writ). Rivers made no request to the trial court for findings of fact and conclusions of law. Absent such findings and conclusions, we will assume the trial judge found every fact necessary to sustain the judgment. *Grimes v. Collie*, 733 S.W.2d 338, 341 (Tex. App.—El Paso 1987, no writ). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

Rivers claims that there is no evidence to support the valuation of the land in the Commissioners' Report that was accepted by the trial court, and that the valuation of the land was unsupported and against the great weight and preponderance of the evidence, and that the judgment should be reversed because it resulted in a partition that was manifestly unjust. Rivers also suggests that the trial court considered the report itself to be evidence of the report's correctness. Contrary

to Rivers's argument, in overruling her objections and confirming the Commissioners' Report, the trial court did not "find" the land to be valued at $6,000 an acre. Instead, by overruling the objections and confirming the Commissioners' Report, the trial court implicitly found that Rivers failed to meet her burden to show that the Commissioners' Report was materially erroneous, or unequal and unjust. *See Ellis*, 864 S.W.2d at 557. Rivers attacks the legal sufficiency of the evidence supporting the trial court's implied finding that Rivers failed to show the Commissioners' Report was materially erroneous, or unequal and unjust, based on the market value of the land as stated in the report. According to Rivers, there is no evidence to support the market value determined by the commissioners in their report.

Rivers had the burden of proof to show as a matter of law by the evidence in the trial record that the market value provided by the commissioners in their report was materially erroneous, or unequal and unjust. *See* Tex. R. Civ. P. 771; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Ellis*, 864 S.W.2d at 557. In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner*, 767 S.W.2d at 690. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be

16

sustained only if the contrary proposition is conclusively established. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

For her factual sufficiency challenge to the trial court's implied finding that Rivers failed to show the Commissioners' Report was materially erroneous, or unequal and unjust, Rivers must demonstrate on appeal that the adverse finding, upon which she had the burden of proof, is against the great weight and preponderance of the evidence. *See id.* at 242. In reviewing factual sufficiency, we must examine the entire record, and we consider both the evidence in favor of, and contrary to, the challenged findings. *Id.* at 241. We may not pass judgment upon the witnesses' credibility or substitute our judgment for that of the fact finder, even if the evidence would support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We may set aside the verdict for factual insufficiency only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 241.

Analysis

In issue one, Rivers argues that the trial court erred by accepting the Commissioners' Report. According to Rivers, this Court should reverse the trial court's partition order because the trial court's finding that the land was worth only

$6,000 per acre was supported by no legally sufficient evidence, was against the great weight and preponderance of the evidence and resulted in a partition that was manifestly unjust.

Because Rivers was objecting to the values in the Commissioners' Report, it was her burden to show as a matter of law by the evidence in the trial record that the fair market value of the land provided by the commissioners in their report is materially erroneous, or unequal and unjust. *See Sterner*, 767 S.W.2d at 690. Floyd's testimony that he recently sold 88 acres of high land six miles from the property involved in this case for $6,500 was some evidence to support the trial court's implied finding that the report was not materially erroneous, or unequal and unjust, based on the market values in the report. However, even assuming without deciding that there was no evidence to support that implied finding, Rivers still has not conclusively established the $6,000 per acre land valuation in the Commissioners' Report was materially erroneous, or unequal and unjust. Rivers argues that she "presented uncontroverted evidence that the commissioners had substantially undervalued the land at just $6,000." We disagree. The trial court had before it the Commissioners' Report and Ellisor's appraisal report, Ellisor's testimony as to how he assessed the property and used comps to find market values of the land, and testimony from Rivers and Floyd. At best, the evidence on the fair market value of the land was conflicting. Although Rivers presented evidence that Ellisor valued the

18

land at $9,750 per acre and Rivers believed the value of the land was $12,000 per acre, her evidence did not conclusively prove as a matter of law that the $6,000 per acre land value assigned by the commissioners was materially erroneous, or unjust or unequal. The trial court heard evidence of how the comparable properties Ellisor used differed from the land in this partition suit by having timber or not having improvements, how Ellisor did not walk the entire property and was not aware of the six acres of the property that Floyd testified flooded eighty percent of the time and was useless, how Ellisor did not remember specifically in this case confirming the sales of the comps he found online, and that Rivers had not contested the appraisal of the land valued at $188,000 by the appraisal district. The trial court also heard Floyd testify that he recently sold 88 acres of high land with timber six miles away from the property in this case for $6,500 an acre. We conclude that Rivers has not established as a matter of law that the Commissioners' Report is materially erroneous, or unequal or unjust because the fair market values of the land differ from those in the Commissioners' Report.

Furthermore, the trial court, as finder of fact, could have believed that the testimony of Ellisor and Rivers did not establish that the Commissioners' Report was materially erroneous, or unequal and unjust. After reviewing all the evidence, we conclude that Rivers has not shown that the trial court's implied finding that she failed to meet her burden to prove the Commissioners' Report was materially

19

erroneous, or unequal and unjust, based on the land valuation in the report, nor was it against the great weight and preponderance of the evidence. We reject Appellant's sufficiency challenge, and we overrule issue one.

In issue two, Rivers argues the trial court erred in not allowing her to question the commissioners. According to Rivers, "no testimony was presented by any commissioner to support the commissioners' valuation of the land at just $6,000 per acre." Rivers argues the Commissioners' Report "provides only a conclusory statement of value[]" and "is mere *ipse dixit* and legally no evidence of the land's value." Rivers argues that "[b]ecause the trial court refused to allow the commissioners to testify, [Rivers] was prevented from asking them about (a) their qualifications for assessing property values or (b) their method or support for valuing the old house at $110,000 and for valuing the land at just $6,000 per acre."

We review a trial court's decision to admit or exclude a witness from testifying for an abuse of discretion. *See Harris Cty. Appraisal Dist. v. Houston Laureate Assocs. Ltd.*, 329 S.W.3d 52, 56 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Rivers objected to the Commissioners' Report solely on the basis that the market values in the report were incorrect. The Agreed Decree of Partition did not require the commissioners to explain their methodologies in determining market values. To the extent, if any, Rivers argues on appeal that by preventing her from calling the commissioners as witnesses she was deprived of her opportunity to show

20

the Commissioners' Report was materially erroneous, or unequal and unjust, she did not make that objection at trial, and she did not make a proffer of evidence thereon, therefore she waived her objections on those grounds.[3] *See* Tex. R. App. P. 33.1. We overrule issue two.

Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 21, 2020
Opinion Delivered May 20, 2021

Before Kreger, Horton and Johnson, JJ.

---

[3] We note that on the record before us, there was a discussion between defense counsel and the trial court about the commissioners not testifying but there was no stated objection by defense counsel. Also, there is no bill of exceptions or offer of proof in the record showing the substance of the excluded evidence.